No. 99-623

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 59

STEPHANIE LEE,

Plaintiff and Appellant,

v.

USAA CASUALTY INSURANCE CO.

Defendant and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Alexander Blewett, III, Hoyt & Blewett, Great Falls, Montana

For Respondent:

Richard J. Briski, Helena, Montana

Submitted on Briefs: February 22, 2001
Decided: April 16, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Stephanie Lee (Lee) appeals from a summary judgment entered by the Eighth Judicial District Court, Cascade County, in favor of USAA Casualty Insurance Co. (USAA), and the denial of her motion for summary judgment. Lee claims that she was entitled to under-insured motorist coverage under a USAA policy which insured two vehicles that she co-owned with the named insured on the policy. USAA maintains that, as a matter of law, Lee is not a named insured under its policy, and is therefore not entitled to under-insured motorist coverage.

¶2 We affirm in part, reverse in part, and remand.

¶3 Lee raises the following issues for this Court's review:

> 1. Did the District Court err in denying Lee's motion for summary judgment based on USAA's letter affirming coverage because Lee was a registered owner of both vehicles?

> 2. Did the District Court err in granting USAA's motion for summary judgment because an issue of fact existed concerning "notice" to USAA?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The origins of this dispute took shape prior to August 9, 1998, the date when Lee sustained injuries while riding in a taxi cab near the airport in New Orleans, Louisiana, after the taxi was rear-ended by another driver. The driver of the other vehicle, who was at fault, carried liability insurance with a $10,000 policy limit, which undisputedly served only to scratch the surface of compensating Lee for her injuries.

¶5 Prior to that date, her long-term co-habitating boyfriend or companion, David Hoss, purchased insurance from USAA, which covered two vehicles, a 1988 Acura and a 1989 Acura. It is undisputed that Hoss and Lee co-owned the two vehicles, as evidenced by certificates of title in the record. They had jointly owned the 1989 Acura since 1990, and purchased the 1988 Acura in 1997, with a certificate of title listing them as co-owners

issued on February 17, 1998. It is also undisputed that although not married, Lee and Hoss have shared a household and parenting responsibilities for 14 years.

¶6 It is also undisputed that Lee was not expressly made a named insured on the USAA policy, and that the definitions of a "covered person" in the policy did not include a co-habitating partner, unless that person was driving or was a passenger in a "covered auto." In a typical fashion, the policy provided coverage for the named insured and his or her "spouse" and "family members," which it defined as persons related by blood, marriage, or adoption residing in the named insured's household.

¶7 Hoss's policy with USAA included underinsured motorist (UIM) coverage. This coverage did not necessarily require that the "covered person" must be driving or be a passenger in a "covered auto." Thus, the UIM coverage potentially extended to the factual circumstances described here, where Lee was occupying a taxi cab which was involved in an accident.

¶8 Following her accident in Louisiana, Lee filed an UIM claim, contending she was entitled to stack coverage under both covered vehicles, which would make $200,000 available to cover the injuries she sustained in the accident.

¶9 USAA does not now contest that such a policy coverage scenario would be possible if, in fact, Lee was a "covered person" under the UIM provision found in Hoss's policy. USAA's current position is that Lee is not a named insured, and as a matter of law is not a "covered person" under the relevant policy provisions. Therefore, according to USAA, it has no obligation or duty to treat her as such under any of the legal theories argued by Lee.

¶10 USAA's position, however, was not always so certain. For example, it is undisputed that on October 16, 1998, Larry Hutchison, a claims adjuster for USAA in Florida, wrote a letter to Lee's attorney in Great Falls requesting a copy of the titles for the two Acuras. Hoss and Lee complied. Hutchison then wrote to Lee's counsel, on November 12, stating that because Lee was a co-owner of the vehicles, "she would be entitled to the Underinsured Motorists coverage of our policy . . ." Hutchison informed counsel for Lee, however, that USAA would exclude her from medical payment coverage, because the accident occurred during the course of her employment and therefore Workers' Compensation benefits were available. The letter also advised Lee of the condition that she must first exhaust coverage from the at-fault party as well as any underinsured motorist coverage available from the taxi cab company before USAA coverage would be

extended.

¶11 On November 19, 1998, counsel for Lee sent a letter to Hutchison, informing USAA that Lee intended to stack UIM coverage limits. It is undisputed that on November 20, 1998, USAA changed its position, and implicitly informed Hoss that Lee, as a co-owner of the vehicles under his policy, was not entitled to UIM coverage; rather, she had only "limited coverage." USAA would later deny Lee's claim to UIM coverage under Hoss's policy.

¶12 Lee filed her complaint on February 8, 1999, claiming that she was entitled to underinsured motorist coverage under Hoss's USAA policy. She further claimed that she had or would soon settle her claim with the negligent driver in Louisiana for the $10,000 policy limit.

¶13 USAA filed an amended Answer on April 2, 1999. USAA asserted a blanket denial to Lee's claim. Lee alleges that USAA's first Answer, filed on March 28, is material here, because USAA allegedly admitted that Lee was entitled to coverage under its policy with Hoss.

¶14 Both parties filed motions for summary judgment. Lee filed her motion for summary judgment on April 9, 1999. USAA responded on May 2, and filed its own motion for summary judgment on June 7, 1999. A hearing took place on July 29, 1999.

¶15 At issue here are two documents presented by USAA at the hearing. The documents, bearing the dates January 15, 1996, and January 15, 1999, are copies of a "policy integrity form" apparently sent each year to insureds for the stated purpose of assuring that the insured pays "the correct amount" for the insurance policy. The form requests that the named insured "make any changes or corrections as necessary" and may add "a driver or a vehicle." The form also provides that if an insured makes changes, he or she should return the form; otherwise, the insured is specifically instructed to not return the form if no changes are made. The 1996 form, which was signed and dated by Hoss on October 25, 1995, showed that Hoss was the named insured under the USAA policy, and also the principal driver of a 1989 Acura and a 1983 Ford. Other than the location where the two vehicles would be garaged, no changes were made. The 1999 form affirms that Hoss is the named insured, identifies the two Acuras at issue here, and then shows a handwritten amendment that Lee is an additional driver, and a principal driver of the 1988 Acura.

¶16 USAA offered the "policy integrity forms" as proof that it had no knowledge that Lee was the owner or operator of either vehicle at the time the accident occurred. This position was adopted at the hearing in response to Lee's argument that USAA simply made a mistake, or a clerical omission, by not including her, as an owner of the vehicles, on the policies as a named insured.

¶17 In response to Lee's objection, the court stated it was accepting the introduction of only the 1996 form for the singular purpose of showing that Hoss had the opportunity each year to review the policy and make any changes. For this purpose, counsel for Lee stated that he did not have an objection--but insisted that the forms in no manner whatsoever should be used to imply that Hoss had withheld information, or otherwise had "dirty hands."

¶18 The District Court denied Lee's motion for summary judgment and granted USAA's motion for summary judgment on September 20, 1999. The court determined that Lee was not an "insured" for the purposes of UIM coverage pursuant to the express language of Hoss's policy with USAA. Thus, in terms of governing contract law, the court determined that Lee could not gain the benefit from a bargain to which she was not a party.

¶19 Next, the court addressed the issue of whether Montana statutes mandating vehicle liability coverage must be construed to place a duty on insurance carriers to cover, as "insureds," all registered owners of all vehicles the carrier insures. Lee contended that this duty existed whether or not an owner was a party to the insurance contract, a named insured, or otherwise identified in the policy. The court disagreed, and identified the public policy underlying the mandatory liability statutes at issue as one intended to compensate innocent third parties injured or damaged in an accident, rather than provide all vehicle owners with liability protection.

¶20 Thus, the court concluded that Hoss's policy with USAA complied with the statutory requirements, notwithstanding the fact that a co-owner of the vehicles was never identified in the policy. The court determined, therefore, that "[t]here are no statutes or public policy reasons for extending underinsured or uninsured motorist coverages to persons who are not either expressly parties to the insurance contract or passengers in a covered vehicle."

¶21 The court next addressed the issue of estoppel or judicial admission. Finding no evidence that Lee had relied on the Hutchison letter, the court determined that USAA was not estopped from denying UIM coverage. The court also determined, as a matter of law,

that USAA's first Answer did not serve as a judicial admission.

¶22 Lee filed a Rule 59, M.R.Civ.P., motion for a new trial on September 29, 1999. Attached to the motion were the two "policy integrity forms" and an affidavit submitted by Hoss in which he claimed for the first time that he had informed USAA by phone some time between November of 1997 and February of 1998 that Lee was a co-owner of both vehicles, and that she should be included as a named insured on his policy. In response, USAA submitted an affidavit by one of its agents that contended that USAA had no record or recollection of that phone conversation, and that the introduction of such evidence, under Rule 59, was improper and could not sustain the motion. Without discussion, the District Court denied the motion on November 5, 1999.

¶23 Lee appeals summary judgment entered in favor of USAA.

## STANDARD OF REVIEW

¶24 This Court reviews an order granting summary judgment *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by the district court. *See Spinler v. Allen*, 1999 MT 160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14. This Court looks to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact. *See Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17.

¶25 Summary judgment is an extreme remedy which should be granted only when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P., *Spinler*, ¶ 16. The party seeking summary judgment, therefore, has the burden of demonstrating a complete absence of any genuine factual issues. *See Spinler*, ¶ 15. The party seeking summary judgment also must overcome the burden that all reasonable inferences that might be drawn from the offered evidence will be drawn in favor of the party opposing summary judgment. *See Erker*, ¶ 17.

¶26 Where the moving party is able to demonstrate that no genuine issue as to any material fact remains in dispute, however, the burden shifts to the party opposing the motion. *See Spinler*, ¶ 15. This burden shift requires that the opposing party present material and substantial evidence, rather than merely conclusory or speculative statements, to raise a genuine issue of material fact. *See Erker*, ¶ 17.

¶27 We review a district court's denial of a Rule 59, M.R.Civ.P., motion to amend for abuse of discretion. *See Joseph Eve & Co. v. Allen*, 1998 MT 189, ¶ 46, 290 Mont. 175, ¶ 46, 964 P.2d 11, ¶ 46. "The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Jarvenpaa v. Glacier Elec. Coop., Inc.*, 1998 MT 306, ¶ 13, 292 Mont. 118, ¶ 13, 970 P.2d 84, ¶ 13 (citation omitted).

## DISCUSSION

¶28 Before addressing the issues raised by Lee, we must dispel those theories that simply are unsupportable as a matter of law. In Lee's own words, it has been her primary position throughout this litigation that as a matter of law "she was entitled to UIM coverage because she was an owner of both covered autos" and her "ownership of the insured vehicles created underinsured motorist coverage."

¶29 Although not expressly seeking reformation, Lee in essence contends that by operation of law or as a matter of public policy we must reform the USAA policy to include her as a named insured because she undisputedly is the co-owner of the two vehicles under the policy. *See*, *e.g.*, *Horace Mann Ins. v. Hampton* (1989), 235 Mont. 354, 358, 767 P.2d 343, 345 (discussing reformation of insurance contract and citing 12A Couch on Insurance § 45:692 (rev.ed.)). We are not persuaded by this argument.

¶30 We agree with Lee, however, that this Court is bound to interpret the terms of an insurance contract according to their usual, common-sense meaning as viewed from the perspective of a reasonable consumer of average intelligence not trained in law or insurance business. *See Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 14, 293 Mont. 140, ¶ 14, 974 P.2d 623, ¶ 14 (citations omitted). The counter-balance rule to the foregoing is that if the language is clear and explicit this Court may not rewrite an insurance contract, but must enforce it as written. *Wendell*, ¶ 14 (citations omitted). This Court has held, in fact, that expectations which are contrary to a clear exclusion from coverage are not objectively reasonable. *See Counterpoint, Inc. v. Essex Ins. Co.*, 1998 MT 251, ¶ 18, 291 Mont. 189, ¶ 18, 967 P.2d 393, ¶ 18 (citations omitted).

¶31 Assuming that Hoss read the policy it should have been obvious that a non-spouse, non-family member resident of his household was excluded from UIM coverage under certain circumstances. *See*, *e.g.*, *Fillinger v. Northwestern Agency, Inc., of Great Falls*, (1997), 283 Mont. 71, 77-79, 938 P.2d 1347,1351-52 (discussing duty of insured to read

policy, and indicating that although duty is not absolute insured must act reasonably under the circumstances).

¶32 For example, on the declaration page of Hoss's USAA policy the "Named Insured" is identified as "David J. Hoss." Under "DEFINITIONS" the policy provides that the terms *you* and *your* refer to the "'named insured' shown in the Declarations and spouse if a resident of the same household." The policy also defines "family member" as "a person related to *you* by blood, marriage, or adoption who is a resident of your household." (Emphasis added).

¶33 It is undisputed that Lee was not identified as a named insured, and was not a spouse or a family member, as defined under the policy.

¶34 The policy defines "Your covered auto" as including "Any vehicle shown in the Declarations." It is undisputed that the vehicles shown in the declarations at the time of the accident were the two Acuras co-owned by Hoss and Lee. There are no express terms or provisions, however, requiring or otherwise indicating that *ownership* of a "covered auto" was a material prerequisite to attaining the contractual status as a "named insured," or for placing the identification of a particular vehicle on the declarations page. Thus, whether Hoss was in fact the registered owner of *his covered auto* under the USAA policy is immaterial in construing the express terms and provisions found therein.

¶35 Under the UIM coverage provisions at issue, the term "covered person" is defined as either "You or any family member" and "Any other person occupying your covered auto." Again, it is undisputed that Lee was not "You," a "family member," or occupying a "covered auto" at the time she sustained injuries in the New Orleans accident.

¶36 Therefore, as a matter of law, the insurance agreement between Hoss and USAA cannot be construed, due to a patent ambiguity, as conferring the status of "named insured" upon Lee. Accordingly, we conclude that there are no ambiguities within the USAA policy as to whether Lee was excluded from UIM coverage at the time she sustained injuries in New Orleans in August of 1998. At that time, it is undisputed that Lee had not been expressly made a named insured on the USAA policy, and that the definitions for the various classes of automatic insureds under the policy did not include a co-habitating partner, unless that person was driving or was a passenger in a "covered auto." The USAA policy does not expressly link ownership of a "covered auto" with the term "you" or "your." Thus, for the purpose of illustration, even if Lee was the *sole owner*

of the vehicles, and Hoss was the named insured, the results here would be no different.

¶37 Other courts addressing a similar interpretation of vehicle insurance policies have reached the same conclusion. For example, a North Carolina court addressed virtually the same issue in *Nationwide Mut. Ins. Co. v. Williams* (N.C.Ct.App. 1996), 472 S.E.2d 220. In that case, the injured spouse of a co-owner of a vehicle claimed he was entitled to UIM coverage under the policy of the other co-owner, his spouse's father. The court denied that this coverage existed under the express provisions of the policy. The court found that the express UIM coverage under the spouse's father's policy applied only to the named insured, or family members residing in the same household, or persons occupying covered autos. The court observed that (1) the co-owner spouse was a "named driver" rather than a "named insured" under her father's policy, (2) neither she nor the injured defendant resided in her father's household at the time of the accident, and (3) the vehicle driven by the injured defendant was not a covered auto. *See generally Nationwide*, 472 S.E.2d at 221-23. *See also Kashmark v. Western Ins. Co.* (Minn. 1984), 344 N.W.2d 844, 849 (change in residence of named insured's son altered son's status from "family member" entitled to uninsured motorist coverage to an "omnibus" insured entitled to coverage only while using a described auto).

¶38 As to whether the USAA policy should nevertheless be reformed because, as a matter of public policy expressed in governing legislation, *all* owners of insured vehicles must be named insureds under liability policies covering the owners' vehicles, we find little support for this assertion as applied to this specific context.

¶39 As this Court recently discussed in *Infinity Ins. Co. v. Dodson*, 2000 MT 287, 302 Mont. 209, 14 P.3d 487, our mandatory liability statutes place the burden on vehicle owners to cloak each *vehicle* they own with prescribed minimum amounts of omnibus liability coverage regardless of the *person* behind the wheel, so long as the person driving the vehicle has express or implied permission to use the vehicle. *See Infinity*, ¶ 48. *See also* § 61-6-103(2)(a), MCA (requiring that an owner's policy of liability must expressly designate all vehicles covered); § 61-6-301(1)(a), MCA (requiring that an owner of a motor vehicle registered and operated in Montana shall continuously "provide" insurance against loss caused by maintenance or use of a motor vehicle); *Bill Atkin Volkswagen, Inc. v. McClafferty* (1984), 213 Mont. 99, 104, 689 P.2d 1237, 1239-40 (discussing statutory requirement that vehicle owner must insure against liability from permissive use of owner's vehicle, although auto dealer does not register inventory vehicles).

¶40 Again, it is the *vehicle,* not the *person* driving the vehicle, that is the focal concern of our mandatory liability laws. *See Infinity*, ¶ 48. Our governing mandatory liability laws do not require, therefore, that each named insured under a vehicle liability policy must be the registered owner of the insured vehicle, or that all registered owners of a vehicle must be named insureds. *See Horace Mann*, 235 Mont. at 358-59, 767 P.2d at 345-46 (holding that Mandatory Liability Protection Act requires that liability insurance must continue to cover the *vehicle* even though the permittee may have exceeded the scope of the owner's permission or consent).

¶41 Lee's public policy argument would make perfect sense if the USAA policy did not deem her an automatic insured for liability when she got behind the wheel of either of the two vehicles she co-owned with Hoss, or otherwise excluded mandatory liability coverage due to a loss resulting from her ownership, maintenance, or use of the vehicles. No one seriously disputes, however, that the legal obligation to continuously "provide" insurance for the two vehicles was fully discharged by at least one of the owners, in that the USAA policy provided the minimum levels of liability coverage in full compliance with § 61-6-103, MCA, regardless of who was behind the wheel of either vehicle.

¶42 We conclude, therefore, that whether one or both or neither of the registered owners were "named insureds" on Hoss's USAA policy is immaterial in our analysis of whether the policy comported with the liability coverage mandates of §§ 61-6-103 and 301, MCA.

¶43 In this same light, whether USAA "realized" that Lee was a co-owner or an "operator" of the vehicles is likewise immaterial to our discussion. Neither fact is material in determining whether Hoss's policy with USAA complied with our mandatory liability laws. Thus, whether Hoss informed USAA that Lee was or would be an "additional driver" or was a co-owner of the vehicles, or whether USAA could have or should have or did in fact discover this information, is all immaterial in determining whether the UIM coverage applied to Lee. That USAA was unaware, as it claims, that Lee even existed--let alone posed an insurance risk as a likely operator of either vehicle--speaks far more of its internal customer service policies than to any questions of law under our mandatory vehicle liability insurance statutes. Why an insurance company would issue a vehicle policy to anyone without ascertaining who is the registered owner of the vehicle or vehicles, who resides in the named insured's residence, and who the prospective drivers would most likely be is of no concern to any legal determination here.

¶44 Accordingly, this matter can be pared to (1) whether USAA's alleged admission that

Lee, as an owner of the vehicles, was covered under the policy's UIM provisions is binding; and (2) whether Hoss specifically requested that USAA make Lee a named insured under his policy and then USAA agreed but failed to do so. Thus, we proceed to the issues raised.

## *Issue 1.*

*Did the District Court err in denying Lee's motion for summary judgment based on USAA's letter affirming coverage because Lee was a registered owner of both vehicles?*

¶45 Although the policy itself was not ambiguous, Lee nevertheless contends that because USAA's claims adjuster in Florida, Larry Hutchison, initially informed Lee that "she would be entitled to the Underinsured Motorists coverage of our policy" USAA should be bound by this admission of coverage. Lee also claims that USAA's first Answer, which was later amended, should be a binding judicial admission as a matter of law, as well. We find little merit in either of these arguments.

¶46 In the November 12, 1998 letter sent by Hutchison to Lee's counsel, USAA denied medical payment coverage based on a workers compensation exclusion. Hutchison then incorrectly informed counsel for Lee, that Lee "would be entitled to the underinsured motorists coverage of our policy."[1] The letter indicated that Lee would first be required to exhaust the at-fault party's liability coverage as well as any underinsured coverage available under the taxi cab company's insurance policy before USAA would "extend any coverage to her from this accident." In another letter dated November 20, 1998, however, another USAA representative, Donna Skeith--without any direct reference to the Hutchison letter--stated in part: "Because Stephanie Lee is not a family member by this definition, she has limited coverage . . . she is not covered as the operator of, or as a passenger in, any nonowned, borrowed, or rented vehicle."

¶47 Generally, we agree with the authority relied on by USAA that an assurance made by an insurance agent that a particular coverage exists, in the absence of an ambiguity, does not "create" or extend coverage beyond those covered risks expressly identified in the policy or those risks that are expressly excluded. *See Shows v. Pemberton* (Wash.Ct.App. 1994), 868 P.2d 164, 166-67; *DeJonge v. Mutual of Enumclaw* (Or. 1992), 843 P.2d 914, 916. As provided under § 33-15-302, MCA, an insurance policy must contain the entire contract between the parties, and "neither the insurer or any insurance producer or representative thereof nor any person insured thereunder shall make any agreement as to

the insurance which is not plainly expressed in the policy." Thus, Lee's contention that USAA's "agreement" through the Hutchison letter "created" UIM coverage in favor of Lee cannot be sustained as a matter of law.

¶48 In sum, assurances or representations made as a result of confusion and misfeasance by an insurance company agent do not render an otherwise unambiguous policy "ambiguous" as a matter of law. Rather, as a general rule, such conduct may be offered to demonstrate that an ambiguity exists--particularly from the perspective of a reasonable consumer of insurance. *See generally Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.* (Cal.Ct.App. 2000), 93 Cal.Rptr.2d 364, 383 (insurance agent may bind insurer in giving ambiguous policy provision an interpretation that coverage exists); *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 14, 293 Mont. 140, ¶ 14, 974 P.2d 623, ¶ 14 (Court is bound to interpret the terms of an insurance contract according to their usual, common-sense meaning as viewed from the perspective of a reasonable consumer of insurance products).

¶49 Nevertheless, in some limited instances, an assurance of coverage by an insurance agent that conflicts with an unambiguous policy may afford an insured relief under such theories as waiver or estoppel. *See DeJonge*, 843 P.2d at 916 (agent dissuades insured from reading or understanding policy through its representations that coverage exists); *Farley v. United Pac. Ins. Co.* (Or. 1974), 525 P.2d 1003, 1007-08 (stating that policy language does not have to be ambiguous as a "legal matter" in order to bind the insurer to the agent's "plausible" interpretation that coverage exists when language is viewed through the understanding of the reasonable consumer of insurance, and agent's representations are not "patently absurd").

¶50 Lee has pursued the theory of equitable estoppel on appeal. This issue was never directly raised by Lee before the District Court; rather, USAA briefly addressed the issue of estoppel and the District Court addressed the issue in its Order.

¶51 As this Court has often stated, an element of estoppel is detrimental reliance. *See Truck Ins. Exch. v. Waller* (1992), 252 Mont. 328, 333, 828 P.2d 1384, 1387; *Selley v. Liberty Northwest Ins. Corp.*, 2000 MT 76, ¶ 10, 299 Mont. 127, ¶ 10, 998 P.2d 156 ¶ 10 (listing six elements of equitable estoppel that include (5) the conduct must be relied upon by the other party and lead that party to act, and (6) the other party must in fact act upon the conduct in such a manner as to change its position for the worse; and stating that elements must be established by clear and convincing evidence) (citations omitted).

¶52 We need not determine whether or not the circumstances here are appropriate for applying the doctrine of equitable estoppel as discussed in *Pemberton* and *DeJonge*. Based on our review of the record, we conclude that Lee has failed to present clear and convincing evidence that she settled the underlying case against the tortfeasor, Troy Stewart, for $10,000 in reliance on the November 12, 1998 Hutchison letter that indicated UIM coverage existed, and that such a settlement was to her detriment.

¶53 To the contrary, Lee's complaint, filed February 4, 1999, stated that Stewart's insurer "has *now* agreed to pay the policy limits of $10,000 to Stephanie Lee and Stephanie Lee has reserved her right to bring this underinsured motorist claim against Defendant," and "[i]t is assumed that Defendant has waived or will waive any right of subrogation." (Emphasis added). The complaint then provides that "Plaintiff is entitled to collect from Defendant, pursuant to this insurance contract, the full extent of her damages over and above the $10,000 she *had already received*." (Emphasis added). On appeal, Lee has asserted that she "settled her case against the tortfeasor for the $10,000.00 policy limits in specific reliance upon USAA's representation that UIM coverage existed based upon Lee's ownership of the covered vehicles."

¶54 Notwithstanding the inherent contradictions found in the foregoing conclusory assertions, Lee has presented no evidence that: (1) subsequent to Hutchison's letter Lee satisfied USAA's conditional assurance of coverage by first exhausting the available coverage under both the at-fault driver and the taxi cab company's insurance policies; (2) an actual settlement agreement was entered with the at-fault driver's insurer or the taxi cab's insurer; or (3) that the timing of any such agreements was reached in correlation with Hutchison's November 12, 1998 letter, before USAA affirmatively denied coverage, and thereby withdrew Hutchison's assurances.

¶55 This set of circumstances is in stark contrast to both federal decisions relied on by Lee. In both *Boyle v. Nationwide Mut. Ins. Co.* (D.Mont. 1999), 25 Mont.F.Rptr. 446, CV 99-8-GF-DWM, and *Dion v. Nationwide Mut. Ins. Co.* (D.Mont. 1997), 22 Mont.F.Rptr. 225, CV-95-122-GF, the plaintiffs were named insureds who, following an accident, were assured they would be covered under their policies, only to have this pledge withdrawn due to a new interpretation of underinsured and uninsured coverage by Nationwide. In both cases, the federal court concluded that the policy was ambiguous as a matter of law as to whether uninsured coverage included underinsured coverage as well, and therefore construed coverage in favor of the insured. The withdrawal of coverage undisputedly occurred after the plaintiffs had relied on the prior assurance, and, in *Dion*, the court ruled

that the insurer was estopped from denying coverage.

¶56 With no material facts regarding detrimental reliance in dispute, we conclude that the District Court did not err in determining that, as a matter of law, USAA could not be estopped from denying UIM coverage.

¶57 Finally, Lee contends that USAA's initial Answer filed March 29, 1999, which was superseded by an amended Answer on April 2, 1999, serves as a judicial admission.

¶58 A judicial admission is "an express waiver made in court by a party or his attorney conceding the truth of an alleged fact." *DeMars v. Carlstrom* (1997), 285 Mont. 334, 337, 948 P.2d 246, 248. A judicial admission is not binding unless it is an unequivocal statement of fact, rather than a conclusion of law or the expression of an opinion. *DeMars*, 285 Mont. at 338, 948 P.2d at 249. Judicial admissions may occur at any point during the litigation process; they may arise during discovery, pleadings, opening statements, direct and cross-examination, as well as closing arguments. *See Kohne v. Yost* (1991), 250 Mont. 109, 112, 818 P.2d 360, 362 (citation omitted).

¶59 Our review of both Answers leads to the inevitable conclusion that USAA, essentially, admitted to no material fact of consequence to the matter at bar.

¶60 USAA's first Answer merely stated that "Defendant admits that on July 15, 1998 through January 15, 1999, the plaintiff was insured by the Defendant." Reference to Lee being "insured" was omitted from the amended Answer, which denied the remaining allegations contained in paragraph three of Lee's complaint. Paragraph three, however, merely alleged that Lee "was insured by Defendant." Thus, Lee never asserted that she was or should be deemed *a named* insured, or, for that matter, that she was a co-owner of the vehicles. It is an unequivocal fact that Lee, in certain respects, *was insured* under Hoss's policy with USAA, along with the entire world of permissive drivers.

¶61 Accordingly, we hold that neither USAA's agent's representations to Lee that UIM coverage existed or its first Answer admitting that Lee was insured under Hoss's policy serve as sufficient grounds for enforcing the UIM coverage in Lee's favor, or estopping USAA from denying such coverage.

### Issue 2.

*Did the District Court err in granting USAA's motion for summary judgment because an issue of fact existed concerning "notice" to USAA?*

¶62 Lee contends that providing "notice" of Lee's ownership of the vehicles to USAA was not required for UIM coverage to exist for Lee. In her Rule 59, M.R.Civ.P., motion for a new trial she asserts that "[i]t is Plaintiff's position that it makes no difference whether USAA had notice or did not have notice that Stephanie Lee was an owner when it insured the vehicle *owned by her*." Pursuant to our earlier discussion, we agree.

¶63 Nevertheless, Lee invites this Court to scrutinize this potential fact issue if we find that "notice" was a requirement for coverage, and specifically directs our attention to the "policy integrity forms" submitted by counsel for USAA to the District Court at the summary judgment hearing.

¶64 As Lee correctly points out, although USAA was permitted to introduce the 1996 and 1999 policy integrity forms--although the court apparently accepted only the 1996 form-- the existence of the 1997 and 1998 policy integrity forms was never substantiated, nor were their contents revealed to the court. Thus, if "notice" is an issue, Lee contends that the District Court erred by ruling on inadequate affidavits or documents, and Lee is presumptively prejudiced by not having had an opportunity prior to the hearing to counter USAA's "surprise" introduction of the 1996 and 1999 forms.

¶65 Essentially, Lee's argument strives to transform what amounts to little more than expository dictum into an ultimate legal conclusion reached by the District Court. True, the court did state in its order that "[a]llowing a party to claim the benefits of insurance coverage where no notice was provided to the insurance carrier of additional risks would be an injustice" and "there is no evidence before this court that her existence as an owner or operator of the vehicles was disclosed to Defendant."

¶66 Nevertheless, we conclude that the denial of Lee's claim to UIM coverage subject to the District Court's summary judgment review was well grounded upon Montana law governing mandatory liability insurance for vehicles, the rules of law for construing insurance contracts, and the doctrines of equitable estoppel and judicial admissions. Further, contrary to Lee's assertions on appeal, her counsel specifically did not object to the introduction of the policy integrity forms on the grounds that led the District Court to offer the foregoing comments concerning notice. Finally, Lee has not contended that the 1999 policy integrity form--which she attached to her Rule 59 motion and brief--was

inaccurate, or omitted information that would have any bearing on whether USAA had expressly agreed to place Lee on Hoss's policy as named insured.

¶67 Pursuant to our earlier discussion and our *de novo* review of the forms in question, we conclude that whether USAA had "notice" of Lee's co-ownership of the two vehicles, and whether she was a named driver or a principle driver under Hoss's policy, are immaterial facts in determining whether Lee should or should not be entitled to UIM coverage as a matter of law. We therefore disagree with Lee that the District Court deemed that the issue of notice was "pivotal." To this end, we observe that the District Court's discussion of "notice" is immaterial to its ultimate decisions regarding the absence of material facts in dispute, and USAA's right to judgment as a matter of law pursuant to Rule 56, M.R.Civ.P.

¶68 Nevertheless, in connection with this issue, Lee wishes to raise a factual dispute that was addressed by her Rule 59 motion that is altogether different from her "notice" argument, in that it directly implicates whether she should have expressly been made a named insured on Hoss's policy. In her "Rule 59 Motion for New Trial and Supporting Brief," Lee asserted, for the first time, that Hoss had actually contacted USAA soon after he and Lee purchased their 1988 Acura in November of 1997 to notify USAA that Lee was the owner of both Acuras. Sometime between November of 1997 and February of 1998 Hoss allegedly "placed a telephone call to USAA and advised USAA to include Stephanie Lee as a named insured . . ." Allegedly, USAA assured Hoss that it would satisfy his request. This assertion was made pursuant to a signed affidavit submitted by Hoss.

¶69 In turn, USAA presented an affidavit claiming that it did not possess the 1997 and 1998 policy integrity forms, and that its claims attorney had "made a diligent search of the records regarding any phone calls that were made between November 17, 1997 and February 17, 1998 by David J. Hoss regarding any information on the policies of insurance issued to Mr. Hoss by USAA, and, my search has failed to reveal the existence of any such phone call having been made." USAA did not attach any records supporting the claims attorney's assertion.

¶70 Again, not one inkling of this critical factual dispute was presented by either party to the District Court for review prior to it entering summary judgment in favor of USAA.

¶71 On purely procedural grounds, we first conclude that Lee's motion for a new trial is without merit. As a matter of law, a summary judgment proceeding, which results in a

judgment for one party, is not a "trial" for the purposes of Rule 59(a), M.R.Civ.P., and §
25-11-101, MCA. The statute defines a new trial as a "reexamination of an issue of fact in
the same court *after a trial* and decision by a jury or court or by referees." Rule 56, M.R.
Civ.P., which governs summary judgments, clearly indicates that such a proceeding is a
*pre-trial* adjudication. *See*, *e.g.*, Rule 56(d), M.R.Civ.P. (indicating that where judgment is
rendered not upon the whole case or for all the relief asked a trial may be necessary). This
Court has routinely stated that the purpose of summary judgment is to *eliminate*
unnecessary trials, but that summary adjudication should "never be *substituted for a trial*
if a material factual controversy exists." *See Boyes v. Eddie*, 1998 MT 311, ¶ 16, 292
Mont. 152, ¶ 16, 970 P.2d 91, ¶ 16 (citations omitted and emphasis added). *See also*
Black's Law Dictionary 1435 (6th ed. 1990) (defining summary judgment as a procedural
device available "for prompt and expeditious disposition of controversy *without trial*")
(emphasis added).

¶72 We conclude, therefore, that the District Court did not abuse its discretion in
summarily denying Lee's motion for a new trial.

¶73 We observe, however, that Lee's motion for a new trial is also asserted as a motion for
"*amending* . . . the judgment entered" which invokes Rule 59(g), M.R.Civ.P., "motion to
alter or amend a judgment." In closing her Rule 59 brief Lee urged the District Court "to
grant a new trial *and to amend* the judgment granting summary judgment." (Emphasis
added). This Court has stated that "[w]e shall look to the substance of a motion, not just its
title, to identify what motion has been presented." *Carr v. Bett*, 1998 MT 266, ¶ 22, 291
Mont. 326, ¶ 22, 970 P.2d 1017, ¶ 22 (quoting *Miller v. Herbert* (1995), 272 Mont. 132,
136, 900 P.2d 273, 275). Further, this Court has deemed Rule 59(g) an appropriate
procedure under certain circumstances for seeking a complete reversal of summary
judgment. *See Carr*, ¶ 27.

¶74 In *Carr*, the aggrieved party in a marriage dissolution case sought to amend a
judgment by the court that refused to set aside a foreign judgment from Wyoming in favor
of his spouse. In turn, the court granted the spouse's motion for summary judgment. We
concluded that if the relief was granted, and the foreign judgment was set aside, then there
"were no other options available to the District Court to partially alter or amend the
judgment pursuant to Rule 59(g) and the relief requested" and, accordingly, the Rule 59(g)
motion was "appropriate in seeking a reversal of the court's earlier decisions." *Carr*, ¶ 27.

¶75 Recently, this Court set forth criteria for determining what grounds or issues a party

may or may not raise pursuant to a Rule 59(g) motion to alter or amend. In *Nelson v. Driscoll* (1997), 285 Mont. 355, 948 P.2d 256, we identified four potential grounds: (1) to correct manifest errors of law or fact upon which the judgment was based; (2) to raise newly discovered or previously unavailable evidence; (3) to prevent manifest injustice resulting from, among other things, serious misconduct of counsel; or (4) to bring to the court's attention an intervening change in controlling law. *See Nelson*, 285 Mont. at 360, 948 P.2d at 259 (citing 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2810.1 (1995)).

¶76 We then stated that a motion to alter or amend: (1) is not intended merely to re-litigate old matters nor are such motions intended to allow the parties to present the case under new theories; (2) should not present arguments which the court has already considered and rejected; (3) cannot be used to raise arguments which could, and should, have been made before judgment issued; and (4) is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances. *Nelson*, 285 Mont. at 360-61, 948 P.2d at 259 (citations to federal authority omitted).

¶77 Here, the District Court summarily ruled on Lee's motion to amend without discussion, and therefore it is unclear to this Court whether it took into consideration the foregoing criteria in light of the potentially "newly discovered or previously unavailable evidence" or whether it deemed the substance of Lee's motion and accompanying affidavit as "arguments which could, and should, have been made before judgment issued."

¶78 This Court, therefore, has no means of reviewing whether the District Court under the circumstances acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. As we recently stated in *Norwood v. Service Distrib., Inc.*, 2000 MT 4, ¶ 54, 297 Mont. 473, ¶ 54, 994 P.2d 25, ¶ 54, this Court will not enter a judgment if such action might, in the opinion of the court, work an injustice. *Norwood*, ¶ 54 (quoting *Alley v. Butte & Western Mining Co.* (1926), 77 Mont. 477, 497, 251 P. 517, 524). Here, if Lee's assertion is true, it would call into question numerous factual assertions made by USAA throughout the underlying dispute upon which the District Court relied in entering judgment in USAA's favor. Our affirmation of the court's Rule 59 ruling, therefore, could potentially work an injustice unless and until a far more thorough inquiry is made.

¶79 We conclude, therefore, in light of the criteria identified in *Nelson*, this matter is remanded for the limited purpose of conducting a factual inquiry into the basis of Hoss's

alleged request that Lee be made a named insured, and USAA's assertion that it possesses no knowledge or records that such a request was ever made or agreed to by one of its agents. After a factual determination, the District Court may then enter its judgment on Lee's Rule 59, M.R.Civ.P., motion to amend the judgment in favor of USAA.

¶80 Accordingly, we reverse the District Court's denial of Lee's Rule 59 motion to amend and remand for proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶81 I concur entirely in the Court's opinion on issue 1. I respectfully dissent from that opinion on issue 2 and would affirm the District Court's denial of Lee's Rule 59(g), M.R. Civ.P., motion to amend. In my view, the Court's analysis of--and decision on--issue 2 substantially undermines the summary judgment process and also adds unnecessary requirements in ruling on Rule 59 motions, not required by any existing rule, to district courts already overburdened with work.

¶82 Prior to focusing on the legal issue at hand, it is important to keep certain undisputed facts in this case in mind. While Hoss is not a party herein, it is his policy with USAA which is at issue. Hoss and Lee co-owned the vehicle under which coverage is sought from USAA, and had shared a household and parenting responsibilities for 14 years. Lee and USAA both filed motions for summary judgment and the District Court granted USAA's motion and denied Lee's motion. Thereafter, via a Rule 59 motion, Lee asserted the existence of a factual issue--described by the Court as a "critical factual dispute"--for the first time via an affidavit by Hoss; namely, that Hoss had telephoned USAA soon after the purchase of the 1988 Acura to notify it that Lee also was an owner and needed to be included as a named insured.

¶83 I agree with the Court that Lee's motion properly can be considered one to amend the judgment under Rule 59(g), M.R.Civ.P., but not one for a new trial. I also agree with the Court that, under the unique circumstances in *Carr*, Rule 59(g) was an appropriate procedure for seeking reversal of a summary judgment. In my view, however, nothing in *Carr* supports the use of a post-summary judgment motion to amend--which raises an entirely new factual issue for the first time--such as is presently before us.

¶84 In *Carr*, there were two separate cases: in one, the district court denied the husband's motion to set aside a Wyoming judgment in his spouse's favor and, in the other, on the same day, the district court granted the wife's motion for summary judgment. There also were two Rule 59(g) motions to amend by the husband: the first requested the court to alter or amend the judgment and set aside the Wyoming judgment, and the second requested that summary judgment in the wife's favor be vacated. As we correctly stated under those unique circumstances, "[i]f the District Court granted Ian's request, the [Wyoming] judgment would have been set aside and summary judgment would not have been granted in the dissolution proceeding." *Carr*, ¶ 27. Unlike the present case, *Carr* did not involve a post-summary judgment effort to raise a factual dispute for the first time. Moreover, neither the unique circumstances in *Carr* nor any other extraordinary circumstances exist in the present case where both parties moved for summary judgment and, after losing in the summary judgment proceeding, one party attempts to raise an entirely new factual dispute via a Rule 59(g) motion.

¶85 In addition, while I agree with the Court's reiteration of the criteria set forth in *Nelson* for the grounds on which a Rule 59(g) motion to alter or amend may be premised, I strenuously disagree with the Court's application of *Nelson* to the present case. The "criteria" are merely generic descriptions. Nothing in *Nelson* determines or even suggests that Rule 59(g) motions on such grounds are necessarily appropriate in the post-summary judgment context. Indeed, our sole reason in *Nelson* for setting out these four subject areas identified by commentators Wright, Miller and Kane as those where parties successfully pursued a Rule 59(g) motion was to address the issues before us there, which was whether the motion was one to alter or amend or to reconsider. *See Nelson*, 285 Mont. at 360, 948 P.2d at 259.

¶86 Moreover, I simply cannot agree with the Court's implicit view that, under the facts of this case, the new factual dispute raised by Lee after summary judgment had been granted to USAA may even conceivably fall within the "newly discovered or previously unavailable evidence" criteria stated in *Nelson*. Lee relied on an affidavit by Hoss to raise

this new factual dispute. As pointed out above, it is undisputed that Hoss is Lee's live-in companion of 14 years' duration, the person with whom she co-owns the 1988 Acura, and the holder of the USAA insurance policy at issue in this case. Under these circumstances, it is inconceivable that any affidavit by Hoss could raise "newly discovered or previously unavailable evidence." In addition, under these circumstances, the Hoss affidavit clearly is an effort to accomplish three of the four things for which motions to alter or amend are *not* to be used, according to *Nelson:* (1) to allow a party to present the case under a new theory; (2) to raise arguments which could, and should, have been made before judgment issued; and (3) to give a litigant a second bite at the apple. *See Nelson*, 285 Mont. at 360-61, 948 P.2d at 259.

¶87 Forcing the District Court to expressly address Lee's motion to amend under the facts, and in the summary judgment context, of this case is an invitation to disaster for summary judgment proceedings and trial courts. Rule 56(c), M.R.Civ.P., requires a district court to render summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

That is precisely what the District Court did in this case in granting USAA's motion for summary judgment and denying Lee's cross motion. If Lee wanted to raise the factual issue of whether Hoss contacted USAA about her being a co-owner, she could and should have done so in her opposition to USAA's motion for summary judgment. If she were unable to do so because an affidavit could not timely be obtained from Hoss for purposes of opposing USAA's motion, procedures were available to her in the summary judgment rules for seeking a continuance. *See* Rule 56(f), M.R.Civ.P. I submit that the only portion of *Nelson* which has any application under the facts of this summary judgment proceeding is the part setting forth the purposes for which a Rule 59(g) motion to alter or amend is *not* to be used.

¶88 Finally, the Court observes that the District Court "summarily ruled on Lee's motion to amend without discussion," states it cannot review said ruling, and remands for a factual inquiry and entry of judgment--which presumably must be carefully supported by the District Court. It certainly is true that the District Court summarily ruled on Lee's motion. On the basis of my discussion above, it is my view that the summary ruling was appropriate. Nor am I aware of any requirement that a district court support its denial of a

post-trial or post-summary judgment motion via findings and conclusions or a memorandum of decision. Indeed, in the absence of a ruling on such motions within 60 days, the motions are deemed denied by operation of law pursuant to Rules 59(d) and (g), M.R.Civ.P. In such instances, which are the most common means used by trial courts to handle such motions, we do not receive a ruling at all, much less one supported by findings and conclusions or a memorandum of decision. Nor do we have any difficulty reviewing such deemed denials by operation of law.

¶89 In summary, it is my opinion that, by its decision in this case, the Court is creating a new and unwise method by which a party to a summary judgment proceeding can avoid the application of summary judgment rules and get a "second bite at the apple." In addition, it is creating a mountain of unnecessary work for already overloaded district courts. I do not agree with either result. I dissent.

/S/ KARLA M. GRAY

1. False impressions conveyed by USAA correspondence were not a singular event in this matter. For example, USAA's November 20, 1998 letter to Hoss, stated that "[c]overage does not apply to persons to whom she [Lee] grants permission to operate a vehicle." Although not at issue, if USAA were to hold to this position, its policy with Hoss could potentially contravene state law and breach the express terms of the policy.