DA 10-0611

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 202

SUMMER NIGHT OIL COMPANY, LLC,

      Plaintiff and Appellant,

  v.

MANUEL J. MUNOZ, individually and d/b/a
Miocene Oil and Gas LTD and Miocene Oil
Company, LLC, and MIOCENE LLC; MIOCENE
OIL & GAS LTD.; MIOCENE OIL COMPANY
LLC; and DAN FUGURE,

      Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifteenth Judicial District,<br>In and For the County of Daniels, Cause No. DV 10-2006-3<br>Honorable Katherine M. Irigoin, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Malcolm H. Goodrich, Goodrich Law Firm, P.C., Billings, Montana

      For Appellees:

          Gregory Paul Johnson, Attorney at Law, Billings, Montana

                    Submitted on Briefs:   June 29, 2011

                                Decided:   August 23, 2011

Filed:

_____
                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Summer Night Oil Company (Summer Night) appeals from an order of the Fifteenth Judicial District Court that resolved a dispute over compliance with a settlement agreement with Defendants/Appellees (collectively Miocene). We affirm.

¶2 We review the following issues on appeal:

¶3 *Whether the District Court properly denied Summer Night's motion to compel performance of the Settlement Agreement according to Summer Night's terms.*

¶4 *Whether the District Court correctly denied Summer Night's motion to alter or amend its judgment.*

## FACTUAL AND PROCEDURAL HISTORY

¶5 Summer Night and Miocene resolved a protracted dispute over the operation of two oil wells in Daniels County, Montana, through a settlement agreement (Settlement Agreement) that the parties entered on July 25, 2007. The oil wells in dispute are known as Anderson 27-1 and Anderson 27-2 (Anderson 27-1 and 27-2 or the wells). The Settlement Agreement attempts to release Miocene's interest in the wells. The three-page Settlement Agreement sets forth 18 separate provisions. The parties pepper the Settlement Agreement with the qualifier that the parties agree to use their "best efforts" to fulfill their promises to one another.

¶6 The Settlement Agreement required the parties to perform most of the terms within six months of the July 25, 2007, settlement date. The parties failed to perform timely their

2

obligations under the Settlement Agreement.  More than two years later, in August of 2009, Summer Night filed a motion to compel performance of the Settlement Agreement.

¶7     Most of the dispute involves the first paragraph of the Settlement Agreement. Paragraph 1 describes two payments that Summer Night must make in order to resolve Miocene's interest in Anderson 27-1 and 27-2:

> 1.  To settle any interest of Miocene in Anderson 27-1 and Anderson 27-2, Summer Night will pay the following:
> a)  Summer Night will pay [one half] of the fine due from Miocene to the EPA.  Miocene and Summer Night will agree to use their best efforts to honestly report that a dispute existed between the parties regarding operation of the well and Miocene will use their best efforts to attempt to reduce the fine.
> b)  Within six months of July 25, 2007, Summer Night will pay to Miocene the sum of $75,000 for its investment and equipment located at Anderson 27-1 and Anderson 27-2.  That said monies will be generated from the sale to investors and thus each parties' best efforts to clear title is presumed.

¶8     Summer Night failed to make either of the payments described in Paragraph 1. Summer Night defended its failure on the basis that the Settlement Agreement conditioned its obligation to make the payments included in Paragraph 1 on its sale of Anderson 27-1 and 27-2.  Summer Night has failed to sell Anderson 27-1 and 27-2.  Summer Night blames Miocene for Summer Night's inability to sell the wells.

¶9     Summer Night claims that Miocene's failure to clear encumbrances to the title in accordance with the Settlement Agreement prevented it from selling Anderson 27-1 and 27-2.  Summer Night argues that Paragraph 1(b)'s statement that "best efforts to clear title is presumed" requires Miocene to deliver clearance title documents to Summer Night before Summer Night must make the payments included in Paragraph 1.

3

¶10   The parties also dispute most of the rest of the Settlement Agreement. Paragraph 3 of the Settlement Agreement directs Miocene to obtain quitclaim deeds to Anderson 27-1 and 27-2 from its working interest owners by August 20, 2007. Summer Night alleges that Miocene has failed to perform its obligation under Paragraph 3. Miocene counters that it had obtained the quitclaim deeds from its working members before August 20, 2007. Miocene maintains that it provided copies of the quitclaim deeds to Summer Night.

¶11   Summer Night next alleges that Miocene improperly placed liens against its property in violation of the Settlement Agreement. Miocene placed liens against Anderson 27-1 and 27-2 before the parties had entered the Settlement Agreement. Miocene apparently had filed a $35,000 lien against Anderson 27-1 on October 5, 2005, and another $35,000 lien, also against Anderson 27-1, on October 17, 2005.

¶12   Miocene also filed liens against the wells after the Settlement Agreement entered on July 25, 2007, had failed to resolve the dispute. Miocene apparently filed an $89,000 lien against Anderson 27-1 on June 4, 2008. It appears that Miocene also filed at least two more liens against Anderson 27-1 and 27-2: one for $136,484 on December 5, 2008, and one for $70,000 on July 29, 2009. Miocene released all of its previous liens against the wells, according to Summer Night, after Summer Night filed its motion to compel performance under the Settlement Agreement. Miocene instead evidently aggregated all the assets that it claimed to be owed into one final lien against Anderson 27-1 and 27-2 in the amount of $258,984 on June 17, 2010. Summer Night contends that these encumbrances further impeded Summer Night's ability to sell Anderson 27-1 and 27-2.

4

¶13     Summer Night suggests that the delay in the sale of the wells caused a significant decrease in the wells' value as a result of the plummeting economy. Summer Night contends that the $75,000 that it promised to pay Miocene in Paragraph 1(b) of the Settlement Agreement now represents a disproportionately high portion of the wells' value. Miocene would receive an inequitably higher portion of the wells' value, according to Summer Night, as a result of Miocene's improper interference with the wells' sale if the parties comply strictly with the terms of Paragraph 1(b) of the Settlement Agreement.

¶14     Paragraph 5 of the Settlement Agreement discusses the final distribution of funds and the final exchange of documents. Paragraph 5 provides that the distribution of funds and the exchange of documents shall occur within six months of July 25, 2007. Paragraph 5 further provides that "[a]ll documents to clear title shall be delivered to counsel for the parties prior to recordation." Miocene argues that Paragraph 5 indicates that the parties did not pre-condition Summer Night's payments under Paragraph 1 on the delivery of clearance title documents.

¶15     The Settlement Agreement contemplated a simultaneous exchange of money and documents, according to Miocene, once both parties had performed their respective obligations under the Settlement Agreement. Miocene maintains that it has performed its obligations under the Settlement Agreement. Miocene contends that Summer Night refuses to move to escrow to allow the parties to exchange the payments and to exchange the documents contemplated under the Settlement Agreement. Summer Night maintains that the

Settlement Agreement requires that Miocene deliver all title clearance documents to Summer Night before Summer Night must make any payment to Miocene.

¶16    Summer Night filed a motion to compel performance of the Settlement Agreement on August 18, 2009.  Summer Night asked the District Court to compel Miocene to deliver all title clearance documents.  Summer Night also sought damages that it claimed Miocene had caused by failing to perform timely Miocene's obligations under the Settlement Agreement. Miocene responded with a request to compel Summer Night to pay immediately the fine due to the EPA as contemplated under Paragraph 1(a) of the Settlement Agreement and the $75,000 owed to Miocene under Paragraph 1(b).  Miocene also sought damages for unpaid rental of Miocene's equipment at the wells.  Both parties sought attorney fees.

¶17    The District Court declined to enforce the Settlement Agreement according to Summer Night's terms.  The court concluded that the Settlement Agreement lacks ambiguity, despite the fact that "some grammar appears repugnant."  Accordingly, the court enforced what it determined to be the plain meaning of the Settlement Agreement's terms.

¶18    The District Court ordered Summer Night to pay the balance of the fine owed to the EPA under Paragraph 1(a) within two weeks of its order.  The court also directed the parties to proceed to escrow.  The court ordered Summer Night to place the $75,000 owed to Miocene pursuant to Paragraph 1(b), plus interest, into an escrow account by December 17, 2010.  The court directed Miocene to deliver all title clearance documents to the escrow agent within two business days of Summer Night's payment.  The court declined to award

attorney fees to either party. The District Court denied Summer Night's motion to alter or amend the judgment. Summer Night appeals.

## STANDARD OF REVIEW

¶19 This Court reviews a district court's findings of fact for clear error and its conclusions of law for correctness. *Dambrowski v. Champion Intl. Corp.*, 2003 MT 233, ¶¶ 6-7, 317 Mont. 218, 76 P.3d 1080. The correct interpretation of a contract constitutes a question of law. *Id.* at ¶ 6.

¶20 We will affirm the district court's findings of fact if substantial credible evidence supports the findings. *Byrum v. Andren*, 2007 MT 107, ¶ 14, 337 Mont. 167, 159 P.3d 1062. We review the evidence in the light most favorable to the prevailing party to determine whether substantial credible evidence supports the district court's findings. *Id.*

## DISCUSSION

¶21 *Whether the District Court properly denied Summer Night's motion to compel performance of the Settlement Agreement according to Summer Night's terms.*

¶22 A settlement agreement constitutes a legally enforceable contract. *Dambrowski*, ¶ 9. The court must enforce the plain meaning of an unambiguous contract. *Corp. Air v. Edwards Jet Ctr. Mont. Inc.*, 2008 MT 283, ¶ 32, 345 Mont. 336, 190 P.3d 1111. The parties appear to agree that the Settlement Agreement lacks ambiguity. The parties disagree, however, as to the plain meaning of the Settlement Agreement's terms.

¶23 The District Court determined that nothing in the Settlement Agreement obligated Miocene to take any action as a pre-condition to Summer Night's obligation to pay

7

Miocene's fine to the EPA under Paragraph 1(a). The court further determined that nothing in Paragraph 1(b) obligated Miocene to deliver the clearance title documents as a pre-condition to Summer Night's $75,000 payment to Miocene. We agree.

¶24 Paragraph 1(a) does not discuss the timing for performance of Summer Night's payment to the EPA. Paragraph 1(a) simply provides that Summer Night "will pay [one half] of the fine due from Miocene to the EPA." Paragraph 1(a) likewise says nothing about any action that Miocene must take to trigger Summer Night's obligation to pay the EPA. Paragraph 1(b) expressly provides that Summer Night will pay to Miocene the sum of $75,000 for its investment and equipment located at Anderson 27-1 and 27-2 "within six months of July 25, 2007."

¶25 Section 28-3-601, MCA, provides that a contract allows a reasonable time for performance if the contract does not specify a time for performance. Section 28-3-601, MCA, also indicates that performance should occur immediately in circumstances where performance can be performed instantaneously. The payment of money often constitutes an obligation a party can perform instantaneously. Section 28-3-601, MCA. The court relied on § 28-3-601, MCA, to determine that Summer Night should have performed within a reasonable time.

¶26 This Court discussed what constituted a reasonable time for the payment of money pursuant to a settlement agreement in *Dambrowski*. The Court refused to adopt a "one-size-fits-all" reasonable time period. *Dambrowski*, ¶ 13. A reasonable time usually allows as

8

much time as necessary, under the circumstances, to do conveniently what the contract requires. *Id.*

¶27 More than two years elapsed from the date the parties entered the Settlement Agreement on July 25, 2007, until August of 2009, when Summer Night filed its motion to compel. The District Court concluded that this two year period constituted a reasonable time within which Summer Night should have performed its obligation under Paragraph 1(a) to pay its share of the fine to the EPA.

¶28 Paragraph 1(b) likewise directs Summer Night to pay Miocene $75,000 for its investment and equipment at Anderson 27-1 and 27-2 within six months of July 25, 2007. The District Court noted that Paragraph 1(b) presumes each party's "best efforts to clear title." Nothing in the second sentence of Paragraph 1(b) obligates Miocene, however, to deliver title clearance documents to Summer Night as a precondition to Summer Night's payment of the $75,000. Summer Night raises no other circumstances that relieved its payment obligations under Paragraph 1(b) except for its erroneous claim that Miocene's failure to deliver clear title constituted a precondition of Summer Night's payment obligation.

¶29 Summer Night further alleges that Miocene violated the Settlement Agreement by filing liens against the wells. Summer Night contends these liens prevented the sale of the wells and thereby extinguished its payment obligation under Paragraph 1(b). The District Court first concluded that Summer Night's payments under Paragraph 1 became due

9

regardless of whether Summer Night sold the wells. Paragraph 1 contained no precondition to be accomplished by either party that would trigger Summer Night's payment obligation.

¶30     The District Court declined to adopt Summer Night's argument that Miocene had interfered with Summer Night's sales of Anderson 27-1 and 27-2. The court noted that Miocene had filed the liens of which Summer Night complained after the date on which the Settlement Agreement obligated Summer Night to make its payments. Miocene filed several liens in 2008 for the payments due under Paragraph 1 and for rental of Miocene's equipment. Miocene apparently released all of these liens and filed one consolidated lien against the wells in June 2010.

¶31     It also appears as though smaller liens existed before the date that the parties entered the Settlement Agreement on July 25, 2007. The District Court did not address the propriety of these pre-Settlement Agreement liens. The record remains unclear as to the current status of these pre-Settlement Agreement liens. The court concluded, nonetheless, that Summer Night's payments became due to Miocene regardless of whether Summer Night actually sold the wells.

¶32     The court apparently determined that Miocene had not filed these liens in order to interfere with Summer Night's sale of Anderson 27-1 and 27-2. It appears as though Miocene instead had filed the liens to protect its interest in the unpaid money that Summer Night owed Miocene under the Settlement Agreement. Nothing in the record belies the court's conclusion that Miocene had not interfered improperly with Summer Night's sales of Anderson 27-1 and 27-2.

¶33 We agree with the District Court's interpretation of the parties' obligations under the Settlement Agreement. The District Court properly enforced the Settlement Agreement's terms. *Dambrowski*, ¶¶ 6-7. Substantial credible evidence in the record supports the District Court's decision. *Byrum*, ¶ 14.

¶34 *Whether the District Court correctly denied Summer Night's motion to alter or amend its judgment.*

¶35 Summer Night argues that the District Court should have granted its motion under M. R. Civ. P. 59(g) to correct manifest errors of law or fact on which the court based its judgment, and to raise newly discovered or previously unavailable evidence. *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 75, 304 Mont. 356, 22 P.3d 631. Summer Night complained that the District Court's original order incorrectly required Miocene to escrow lien releases only for those liens attributable to Summer Night's failure to perform the Settlement Agreement. Summer Night also argued that the District Court overlooked several facts, including that Summer Night had consented to an escrow arrangement with Miocene. Summer Night reiterated its earlier argument that Paragraph 1(b) requires title clearance before the Settlement Agreement obligates Summer Night to make any payments to Miocene.

¶36 We review for an abuse of discretion a district court's denial of a Rule 59(g) motion to alter or amend. *Lee*, ¶ 27. A party may not use a rule 59(g) motion to relitigate old matters. *Hi-Tech Motors, Inc. v. Bombardier Motor Corp. of Am.*, 2005 MT 187, ¶ 34, 328 Mont. 66, 117 P.3d 159. The District Court upheld its earlier order that directed Summer Night to pay

11

the $75,000 that it owes to Miocene under the Settlement Agreement before it could take possession of any documents that Miocene deposits in escrow.

¶37 The District Court clarified that Summer Night must deposit funds in an escrow account through the U.S. Bank in Denver in order to pay Miocene. The court also amended its order to include Summer Night's request that Miocene provide lien release documents for all liens that Miocene had filed against Summer Night. The court directed that Miocene must deliver "all documents, in recordable form, necessary to release all liens caused to be filed by [Miocene] or on [Miocene's] behalf against the Anderson properties" within two business days after Summer Night delivers payment to escrow.

¶38 The District Court correctly declined to relitigate the matter of whether Paragraph 1 of the Settlement Agreement contained any pre-condition to Summer Night's payment obligations set forth in paragraphs 1(a) and 1(b). *Hi-Tech Motors, Inc.*, ¶ 34. The court properly clarified its instructions to the parties regarding their obligations with respect to escrow. The District Court did not abuse its discretion by modifying its original order in this limited matter. *Lee*, ¶ 27.

¶39 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES C. NELSON

12