No. 03-036

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 251

RICHARD G. COOK and ROBIN J. COOK,
Husband and Wife, and WAYNE E. PARKS and
KAREN M. CARPENTER, Husband and Wife,

       Plaintiffs and Appellants,

    v.

DARLENE DAWN HARTMAN,

       Defendant and Respondent.


APPEAL FROM:    District Court of the Nineteenth Judicial District,
                  In and for the County of Lincoln, Cause No. DV 00-143,
                  The Honorable Michael C. Prezeau, Judge presiding.


COUNSEL OF RECORD:

       For Appellants:

          William A. Douglas, Douglas Law Firm, P.C., Libby, Montana

       For Respondent:

          Sean S. Frampton, Morrison & Frampton, PLLP, Whitefish, Montana


                               Submitted on Briefs:  May 22, 2003

                               Decided:  September 19, 2003

Filed:

                      _____
                                Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Plaintiffs Richard Cook, Robin Cook (the Cooks), Wayne Parks (Parks), and Karen Carpenter (Carpenter), brought this action in the District Court for the Nineteenth Judicial District, Lincoln County, to establish a prescriptive easement on a road that crosses Defendant Darlene Hartman's (Hartman) property, and to recover compensatory and punitive damages as a result of Hartman's interference with the claimed easement. Hartman moved for partial summary judgment on all of the Plaintiffs' easement claims. The District Court granted Hartman's motion in part, with respect to the Cooks' easement claim, and dismissed their claim for punitive damages. The Cooks appeal the District Court orders granting partial summary judgment and dismissing their punitive damages claim. We reverse and remand for further proceedings.

¶2     The issues on appeal are:

¶3     1. Did the District Court err when it granted Hartman's motion for summary judgment and concluded that the Cooks failed to establish continuous and uninterrupted use of the claimed easement?

¶4     2. Did the District Court err when it granted summary judgment in favor of Hartman on Robin Cook's infliction of emotional distress claim?

¶5     3. Did the District Court err when it dismissed the Cooks' claim for punitive damages?

FACTUAL AND PROCEDURAL BACKGROUND

¶6     In 1992, the Cooks purchased a 40-acre parcel of land near Fortine, Montana. The property is situated southeast of another parcel, which is owned by Hartman. Hartman purchased half of her parcel in 1992 and half in 1994. The sole means of access to the

2

Cooks' property is Marl Lake Road, which traverses Hartman's property and is the subject of this case. Marl Lake Road first enters the north end of Hartman's property, where it forks into two roads. This Opinion will refer to the west fork as the Existing Access Road and will refer to the east fork as the Old Skid Road. The forks cross the remainder of Hartman's property and then enter co-Plaintiffs Parks' and Carpenter's property, which is immediately to the south of Hartman's property. Existing Access Road and Old Skid Road eventually reunite forming a loop further south. On the eastern side of that loop an access road or driveway branches off onto the Cooks' property, providing the only road onto that property.

¶7      Ownership of the properties in question and the roads that are the subject of this action are generally depicted as follows:

**[See hard copy for picture of map.]**

¶8      Before the spring of 1995, the Cooks used Marl Lake road and the loop to access their

3

property for camping intermittently while they continued to reside in Missouri. However, in April 1995, Richard and his brother, Shane Cook (Shane), moved to Montana and began living on the Cook property, where they built a pole barn to use as a permanent shelter. They also started construction of two homes, one for Shane and one for the Cook's family. While residing on the Cook property, they used the Old Skid Road to obtain supplies and basic necessities a few times a week. In August 1995, Richard returned to his home in Missouri, but Shane continued to reside on the property and work on construction of the homes. Shane remained on the Cook property until approximately April 1996 when he then returned to Missouri.

¶9 In June 1996, the Cooks returned to Montana on a permanent basis. They rented a home in Columbia Falls from June 1996 to April 1997. During that time, Richard worked at regular employment. However, he also traveled to the property in Fortine approximately four to five times a week to work on his home. The home was eventually completed enough to live in by early 1997. Sometime between April and October of 1997, the Cooks and their children moved into their house on the 40-acre parcel and have continued to live there ever since. Shane rejoined the Cooks in October 1996. Since that time, according to Robin, Shane has resided with them in Columbia Falls or on their property, except for a couple relatively short periods of time when he was away.

¶10 At some point after the Cooks permanently moved into the house on their property, a dispute arose between all of the Plaintiffs and Hartman regarding the use of the access roads that traverse Hartman's property. The dispute culminated in Hartman's decision to alter

4

the existing roads. In October 2000, Hartman had a new road built, labeled New Road on the map, which began near the fork in Marl Lake Road on the Existing Access Road, traveled in a southeast direction, then joined Old Skid Road, essentially bisecting the loop. This New Road provides access to both the Cook and Parks/Carpenter properties. However, the road is alleged to be steeper, more unstable, and makes access to the Cook and Parks/Carpenter properties difficult for two-wheel drive vehicles during winter months. To ensure that the New Road was used, Hartman placed road blockades across Old Skid Road and Existing Access Road, and allegedly destroyed other sections of those roads.

¶11 On November 8, 2000, the Cooks, Parks, and Carpenter filed a complaint against Hartman, seeking an injunction, declaratory judgment, and compensatory damages against Hartman for her interference with their claimed prescriptive easements on Marl Lake Road, Existing Access Road, and Old Skid Road. The complaint also alleged that Hartman acted with actual malice and it prayed for punitive damages as well as damages for emotional distress, expense, and inconvenience caused by Hartman's actions.

¶12 On January 16, 2002, Hartman filed a motion for partial summary judgment and a motion to dismiss the Plaintiffs' claims for punitive damages. The motion requested summary judgment on all of the Plaintiffs' easement claims, and on Richard Cook's, Wayne Parks', and Karen Carpenter's emotional distress claims. Hartman argued that the Plaintiffs had failed to establish continuous and uninterrupted use of the subject roads for the five-year prescriptive period set forth in § 70-19-401, MCA. The parties briefed the partial summary judgment motion and waived oral argument.

5

¶13 On March 22, 2002, the District Court issued an order that granted, in part, Hartman's summary judgment motion. The District Court concluded that summary judgment was not appropriate on the Parks/Carpenter easement claim, but granted summary judgment to Hartman on the Cooks' claims. The District Court found that no one lived on the Cook property between April 1996 and June 1996, as all the Cooks were in another state during that time. The District Court therefore concluded, as a matter of law, that the Cooks failed to demonstrate continuous and uninterrupted use of the subject roads for the required five-year period. Since they could not succeed on that claim, the District Court also granted summary judgment against both Richard and Robin Cook on their infliction of emotional distress claims. In addition, the court also granted summary judgment to Hartman on Parks' and Carpenter's emotional distress claims on separate grounds. Finally, the District Court issued a separate order that dismissed the parties' claims for punitive damages.

¶14 On April 2, 2002, the Cooks moved to alter or amend the order of the District Court and attached an affidavit by Shane. In this affidavit, Shane declared that he had lived on the Cook property until August 1996, rather than the April 1996 date previously sworn to by Robin. The Cooks argued that they had now proven continuous and uninterrupted use and thus summary judgment was inappropriate. The Cooks also claimed that Shane's affidavit proved that there had been no lapse in the use of the access roads to the Cooks' property.

¶15 On September 3, 2002, the District Court denied Cooks' motion to amend. The court again stated that the lapse in the use of the Cook property was fatal to their adverse possession claim. It also declined to consider Shane's affidavit, finding it untimely and

inconsistent with prior statements by the Cooks.

¶16    Parks and Carpenter proceeded with their easement claims, and the District Court held a non-jury trial on the matter on October 29, 2002. On October 31, 2002, the District Court entered its findings of fact and conclusions of law, which determined that Parks and Carpenter had an easement across Existing Access Road and did not have an easement across Old Skid Road. Notice of entry of judgment was entered on November 27, 2002. Parks and Carpenter have not appealed. The Cooks appeal the District Court's judgment denying their prescriptive easement and damage claims.

STANDARD OF REVIEW

¶17    We review a district court's decision granting summary judgment *de novo* and apply the same criteria as a district court. *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Summary judgment is appropriate where the movant shows there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Lemont Land Corp. v. Rogers* (1994), 269 Mont. 180, 183, 887 P.2d 724, 726. The "moving party has the burden of showing a complete absence of any genuine issue as to all facts considered material in light of the substantive principles that entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment." *Kolar v. Bergo* (1996), 280 Mont. 262, 266, 929 P.2d 867, 869.

¶18    Legal conclusions with respect to the summary judgment motion are reviewed for correctness. *See Gonzales v. Walchuk*, 2002 MT 262, ¶ 9, 312 Mont. 240, ¶ 9, 59 P.3d 377,

¶ 9.

DISCUSSION

ISSUE 1

¶19    Did the District Court err when it granted Hartman's motion for summary judgment and concluded that the Cooks failed to establish continuous and uninterrupted use of the claimed easement?

¶20    The District Court found that there were no material facts at issue and as a matter of law the Cooks failed to provide sufficient evidence of continuous and uninterrupted use of the Marl Lake Road for a five-year period, as required by § 70-19-401, MCA. Considering the record before Shane's affidavit filed on April 2, 2002, the District Court concluded that, even if the time that Shane lived alone on the Cook property was considered, there was still a two-month period where none of the Cooks were on the property because they all were in Missouri. The District Court held that this lapse in use reset the clock on the time period required to establish a prescriptive easement. Thus, the District Court reasoned, as a matter of law, the Cooks could not demonstrate a consecutive five-year period prior to Hartman's blocking the access roads in October of 2000.[1]

¶21    The Cooks contend on appeal that the District Court incorrectly interpreted the meaning of the terms continuous and uninterrupted use and that summary judgment was improper. They argue a two-month lapse in use of the access roads is not necessarily fatal

_____

[1] We note in making this holding that the District Court cited a noncitable opinion in its decision regarding the Cooks. Accordingly, we take this opportunity to emphasize that noncitable opinions designated as such "shall not be citable as precedent" pursuant to Montana Supreme Court 1996 Internal Operating Rules, § 1(3)(c).

8

to their claim. The Cooks further claim the late affidavit of Shane bolsters their claim that there is a factual issue concerning continuous use.

¶22    Hartman argues Shane's affidavit should not be considered by either the District Court or this Court on appeal because of its untimeliness. They further argue Shane's occupation of the property cannot be considered for purposes of a prescriptive easement claim as he has no ownership interest in the property. Hartman further argues the attempted use of Shane's affidavit to establish continuous and uninterrupted use of Marl Lake Road necessarily means the Cooks failed to satisfy the exclusive use requirement of their prescriptive easement claims. Last, Hartman reiterates that the District Court's decision was correct in that the Cooks did not continuously use Marl Lake Road for an entire five-year period because their return to Missouri until June 1996 demonstrated an interruption or abandonment of the claimed easement.

¶23    In a prescriptive easement claim, a claimant must show "open, notorious, exclusive, adverse, continuous and uninterrupted use of the claimed easement for the full statutory period of five years." *Lemont Land*, 269 Mont. at 183, 887 P.2d at 726; § 70-19-401, MCA.

¶24    Although, for the reasons stated below, we consider Shane's occupation and use of Marl Lake Road, we agree with the District Court and will not consider his April 2, 2002, affidavit, which was filed with the motion to alter or amend the order granting summary judgment. We have stated:

> [A] motion to alter or amend: (1) is not intended merely to re-litigate old matters nor are such motions intended to allow the parties to present the case under new theories; (2) should not present arguments which the court has already considered and rejected; (3) cannot be used to raise arguments which

9

could, and should, have been made before judgment issued; and (4) is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances.

*Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 76, 304 Mont. 356, ¶ 76, 22 P.3d 631, ¶ 76.

¶25 It is clear that the introduction of Shane's affidavit was intended to re-litigate matters addressed during summary judgment. The Cooks have provided no compelling reason for considering this untimely affidavit. Thus, we only consider Shane's occupation and use of Marl Lake Road to the extent that it was disclosed to the District Court prior to its entry of summary judgment.

¶26 Under the facts as presented in this case, in order to succeed in their claim of continuous, uninterrupted use, the Cooks must include in the necessary five-year period the time that Shane independently occupied and used Marl Lake Road between August 1995 and April 1996. Hartman contends that Shane's use of the property cannot be considered as a matter of law since he is not claiming a prescriptive right for himself and he does not own the property. Further, under *Lemont Land*, Hartman asserts the Cooks' claim must fail because by depending on Shane's use, the Cooks cannot satisfy the exclusive use requirement of a prescriptive easement claim. In contrast, the Cooks contend that Shane's use can be considered because direct personal use is not required by an easement claimant. Citing the Restatement (Third) of Property, Servitudes § 2.16, cmt. *e* (2000) (Restatement § 2.16), the Cooks assert proof may be made through other users such as tenants, guests, customers, visitors, meter readers, mail carriers, school buses, and delivery services.

¶27 This Court has not specifically addressed this issue. Further, this issue was not

10

addressed by the District Court. However, because Hartman asserts this point as a matter of law, because the Cooks do not argue Hartman failed to preserve this issue for appeal, and because we are remanding for trial as discussed below, we consider Hartman's argument here.

¶28    After reviewing the case law and the Restatement, we disagree with Hartman. At the same time, we decline to rely on the broad use allowed by the Restatement § 2.16 as that type of use is not at issue here. First, under § 70-17-109, MCA, occupants as well as owners are allowed to enforce an easement. Therefore, because Shane occupies the property, it is irrelevant that he is not an owner. Second, in order to survive summary judgment, the Cooks must show use that is exclusive and is not dependant on a like right in another. However, the use does not have to be exclusively by the Cooks themselves. Rather, the use directly and exclusively related to the nature and scope of the easement the Cooks seek to establish can properly be considered as evidence of their claim of right to use the road. *Cf. Bennett v. Lew* (Cal. Ct. App. 1984), 199 Cal. Rptr. 241 (holding that tenants may establish a prescriptive right for the dominant owner). While the record is not clear as to the Cooks' arrangement with Shane to use their property, Shane obviously has their permission to occupy the property. Therefore, Shane's use is within the easement they seek to establish.

¶29    We have previously held that "'[c]ontinuous' use is that which is made often enough to constitute notice of the claim to the potential servient owner." *Lemont Land*, 269 Mont. at 184, 887 P.2d at 727 (*quoting Downing v. Grover* (1989), 772 P.2d 850, 852). *See also*

11

*Confederated Salish & Kootenai Tribes v. Vulles* (9th Cir. 1971), 437 F.2d 177, 180 ("Continuous use [such as will establish right-of-way by prescription] does not mean constant use. Rather, if the claimant used the right-of-way whenever he desired, without interference by the owner of the servient estate, the use was continuous and uninterrupted.").

¶30    Further, we agree with the Restatement § 2.17 position on the issue of what is necessary to show continued use of a claimed easement:

> There are two aspects to the requirement that a prescriptive use be continued for the prescriptive period: one mental, the other physical. The mental aspect requires that the prescriptive user remain in an adverse posture to the holder of the servient estate throughout the prescriptive period. . . .
>
> The physical aspect requires that the use be open or notorious throughout the prescriptive period. It does not require that actual physical use be made constantly, or even frequently. If the use continues to be open or notorious . . ., the fact that no physical use of the inchoate servitude is made for some period of time does not stop the prescriptive period from running. Seasonal uses, intermittent uses, and changing uses all may meet the continuity requirement so long as they are open or notorious.

RESTATEMENT (THIRD) OF PROPERTY, SERVITUDES § 2.17, cmt. *i* (2000).

¶31    We hold that the District Court erred when it concluded that, as a matter of law, the approximate two month lapse in use of Marl Lake Road could not satisfy continuous and uninterrupted use. The fact that all of the Cooks were supposedly living in Missouri for two months, and did not use Marl Lake Road during that time, may cast some doubt on whether there was continuous use of the roads in question. However, construing all reasonable inferences in favor of the Cooks, and considering the nature and character of these roads, a question of fact arises as to whether the Cooks continually used the road. Therefore, there is a genuine issue of material fact as to whether the Cooks' maintained continuous use of

12

Marl Lake Road and a trial is necessary.

¶32 Hartman's additional contention that the Cooks could not demonstrate uninterrupted use of the Fortine property due to the lapse in use of Marl Lake Road is likewise not persuasive. In *Scott v. Weinheimer* (1962), 140 Mont. 554, 560, 374 P.2d 91, 95, *overruled on other grounds by Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, 879 P.2d 715, we held that uninterrupted use is "use not interrupted by the act of the owner of the land or by voluntary abandonment by the party claiming the right."

¶33 Hartman, during the five-year period preceding October 2000, did nothing to interrupt the Cooks' use of any of the roads in question.

¶34 We have held that a determination regarding whether a party has abandoned an established easement is a question of fact. *Rieman v. Anderson* (1997), 282 Mont. 139, 145, 935 P.2d 1122, 1125. For instance, we previously stated:

> In order for there to be abandonment there must be an intent to abandon. . . . An intent to abandon has not been found from mere nonuser [sic]. Abandonment has been held to mean a voluntary act involving a concurrence of act and intent. The act is the relinquishment of possession and the intent is a manifestation not to resume beneficial use of it. Neither of the elements alone is sufficient. [Citations omitted].

*Shammel v. Vogl* (1964), 144 Mont. 354, 359, 396 P.2d 103, 106.

¶35 Although these cases involve the question of abandonment with respect to an established easement, rather than a claim to a prescriptive easement, there is no affirmative evidence now in the record that the Cooks intended to abandon their claim to a prescriptive easement. Shane continued to occupy the Cooks' property and used Marl Lake Road. The Cooks and Shane constructed two houses on the property. They returned and permanently

13

resided on the property after the houses were built. In this case, the two-month lapse in use of the access roads simply cannot, as a matter of law, demonstrate an intent to abandon the claimed easement. Therefore, we conclude the District Court erred when it granted summary judgment against the Cooks' easement claims, and remand for a trial on the issue.

¶36 Did the District Court err when it granted summary judgment in favor of Hartman on Robin Cook's infliction of emotional distress claim?

ISSUE 2

¶37 The Cooks also appeal the District Court's order granting summary judgment on Robin's claim for infliction of emotional distress. They contend the District Court erred because Hartman never actually moved for summary judgment on her claim. The Cooks do not challenge the District Court's order granting summary judgment against Richard's emotional distress claim.

¶38 After reviewing the record, we agree that Hartman did not move for summary judgment on Robin's claim of infliction of emotional distress. Also, we need not consider this issue as we note the District Court dismissed the Cooks' emotional distress claims because their underlying easement claim failed. Specifically, the District Court stated:

> [Cooks'] claim for monetary damages is dependant [sic] upon their claim of a legally enforceable prescriptive easement. [Hartman] cannot be liable for infringing upon a prescriptive easement which does not exist. Having found that the Cooks failed to satisfy the legal requirements for five full years of continuous, uninterrupted use of the road, it necessarily follows that [Hartman's] disruption of the road on their own property cannot serve as a basis to support the Cooks' emotional distress claim.

Since we have concluded above that the Cooks' easement claim may proceed, we accordingly

14

reverse the part of the District Court's order granting summary judgment in favor of Hartman on Robin's infliction of emotional distress claim and remand for reconsideration.

ISSUE 3

¶39 Did the District Court err when it dismissed the Cooks' claim for punitive damages?

¶40 As we have determined the Cooks' easement claims must proceed to trial and that Robin's infliction of emotional distress claim is to be reconsidered by the District Court, we must also reverse the District Court's dismissal of the Cooks' punitive damages claim.

¶41 For the foregoing reasons, the decision of the District Court is reversed and remanded for further proceedings consistent with this Opinion.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE