No. 04-348

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 187

HI-TECH MOTORS, INC., a Montana corporation,
GUNDER McCOMBS and SUE McCOMBS,

     Plaintiffs and Appellants,

  v.

BOMBARDIER MOTOR CORPORATION
OF AMERICA, a Delaware corporation,

     Defendant and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DV 02-795
                Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

     For Appellants:

          L. B. Cozzens (argued), Donald L. Harris; Cozzens, Warren &
          Harris, Billings, Montana

     For Respondent:

          Keith Strong (argued), John A. Kützman; Dorsey & Whitney,
          Great Falls, Montana

     For Amicus Curiae:

          Mark D. Parker (argued), Shawn P. Cosgrove; Parker, Heitz &
          Cosgrove, Billings, Montana (on behalf of Montana Manufactured
          Housing & Recreational Vehicle Association)

          John P. Atkins, Attorney at Law, Bozeman, Montana
          (on behalf of Montana Power Sport Dealers Association)

          James T. Harrison, Jr., Attorney at Law, Helena, Montana
          (on behalf of Montana Automobile Dealers Association)

                                 Argued:  February 2, 2005
                       Submitted:  February 8, 2005
                          Decided:  July 27, 2005

Filed:

                     _____
                               Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Hi-Tech Motors, Inc. (Hi-Tech) and Gunder and Sue McCombs (the McCombs) appeal from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on its order granting summary judgment to Bombardier Motor Corporation of America (Bombardier) and from its subsequent order denying their motion to vacate or, in the alternative, to alter or amend the judgment. We affirm in part, reverse in part and remand for further proceedings.

¶2     We restate the issues on appeal as follows:

¶3     1. Did the District Court err in concluding it had subject matter jurisdiction over the issue of whether a franchise existed between Hi-Tech and Bombardier?

¶4     2. Did the District Court err in granting summary judgment to Bombardier based on its conclusion that no franchise existed?

FACTS

¶5     In 1989, the McCombs opened Hi-Tech in Billings, Montana, for the purpose of selling powersports products such as snowmobiles, motorcycles and all-terrain vehicles (ATVs). Hi-Tech sells vehicles, parts and service for powersports products from a variety of manufacturers and distributors.

¶6     In 1990, Hi-Tech entered into a dealer agreement with Bombardier to sell Bombardier Ski-Doo snowmobiles. The agreement was non-exclusive in that Hi-Tech was not limited to selling only Bombardier products and Bombardier reserved the right to appoint other

2

Bombardier dealers in the Billings area. The parties renewed the dealer agreement on a yearly basis, and the final Ski-Doo agreement expired on March 31, 2001.

¶7　In April of 1999, Hi-Tech and Bombardier entered into a dealer agreement whereby Hi-Tech would sell Bombardier ATVs. However, Bombardier did not provide, and Hi-Tech did not sell, any ATVs under the agreement. The ATV dealer agreement expired by its terms on May 31, 2000, without either party attempting to renew the agreement.

¶8　In June of 2000, prior to the expiration of the Ski-Doo agreement with Hi-Tech, Bombardier entered into a dealer agreement with Hi-Mountain Recreation, Inc. (Hi-Mountain) whereby Hi-Mountain would sell Bombardier snowmobiles, ATVs and personal watercraft in the Billings area. Bombardier did not inform Hi-Tech of its intention to establish an additional Bombardier dealership in the Billings area. Hi-Tech did not become aware of the new dealership until September of 2000, when Hi-Mountain obtained its motor vehicle dealer license and began conducting business as a Bombardier dealer.

¶9　In February of 2001, Bombardier informed Hi-Tech by letter that Bombardier would not be renewing the snowmobile dealer agreement with Hi-Tech when the agreement expired on March 31, 2001, because of concerns that Hi-Tech had created subdealerships in violation of the agreement. Hi-Tech has not been an authorized Bombardier dealer since March 31, 2001.

¶10　Hi-Tech and the McCombs subsequently filed a complaint in the District Court pursuant to § 61-4-210(3), MCA, alleging that Bombardier violated Montana motor vehicle statutes by terminating the dealer agreement between Hi-Tech and Bombardier and entering

3

the dealer agreement with Hi-Mountain. Specifically, Hi-Tech asserted that the dealer agreement between it and Bombardier constituted a franchise and Bombardier failed to follow the administrative procedures set forth in §§ 61-4-205 and -206, MCA, regarding franchises prior to terminating the dealer agreement and entering a new dealer agreement with Hi-Mountain. The McCombs also claimed negligent and intentional infliction of emotional distress. While the complaint also included claims against Hi-Mountain, Hi-Mountain eventually was dismissed from the action and is not involved in this appeal. Bombardier filed a response to the complaint in which it raised as an affirmative defense that it did not violate §§ 61-4-205 and -206, MCA, because its relationship with Hi-Tech did not constitute a franchise.

¶11 Hi-Tech subsequently moved for partial summary judgment on its claim that Bombardier violated the motor vehicle statutes and on Bombardier's affirmative defense that no franchise existed. Bombardier also moved for summary judgment on all of Hi-Tech's claims against Bombardier, asserting that its relationship with Hi-Tech did not constitute a franchise as defined in § 61-4-201(5), MCA, because Hi-Tech was not substantially reliant on Bombardier for the continued supply of new motor vehicles, parts and accessories. Consequently, according to Bombardier, it did not violate any of the motor vehicle statutes at issue relating to franchise relationships. Bombardier also argued that the McCombs' emotional distress claimed failed because the alleged conduct by Bombardier underlying the claim was not unlawful; § 61-4-210(3), MCA, provides only for damages resulting from

4

pecuniary loss, which does not include damages for wounded feelings; and the McCombs could not prove serious or severe emotional distress which was foreseeable by Bombardier.

¶12 The District Court denied Hi-Tech's motion for partial summary judgment and granted Bombardier's motion for summary judgment, determining that the relationship between Hi-Tech and Bombardier did not constitute a franchise as defined in § 61-4-201(5), MCA, and, therefore, Bombardier was not required to comply with the motor vehicle statutes governing franchises. The District Court did not expressly address the McCombs' emotional distress claim, but granted Bombardier summary judgment on that claim as well.

¶13 Hi-Tech then moved the District Court to vacate or, in the alternative, to alter or amend its summary judgment order and grant Hi-Tech's partial summary judgment motion. Hi-Tech argued that the court did not have jurisdiction to consider Bombardier's affirmative defense that the relationship did not constitute a franchise because Bombardier failed to initiate or exhaust the administrative remedies set forth in §§ 61-4-205 and -206, MCA. Hi-Tech also contended that the District Court erred in its interpretation of the phrase "substantially reliant" as used in the statutory definition of "franchise." The District Court denied Hi-Tech's motion. Hi-Tech appeals from the District Court's orders granting summary judgment to Bombardier and denying its motion to vacate or, in the alternative, alter or amend its summary judgment order.

## LEGAL BACKGROUND

¶14 A brief overview of the statutes relevant to the issues before us is appropriate here. Montana regulates the sale and distribution of motor vehicles within the state via the statutes

contained in Title 61, chapter 4 of the Montana Code Annotated (MCA). Pursuant to these statutes, all new motor vehicle dealers must be licensed by the state under the provisions of either Title 61, chapter 4, part 1, or Title 23 of the MCA. *See* § 61-4-202(5)(b) and (d), MCA. Similarly, all new motor vehicle manufacturers, distributors, factory branches, distributor branches, importers and franchisors transacting business within Montana by transferring new motor vehicles to motor vehicle dealers must be licensed by the state. Section 61-4-202(2)(a), MCA. The terms "new motor vehicle dealer," "manufacturer," "distributor," "factory branch," "distributor branch," "importer" and "franchisor" are all expressly defined by statute. *See*, *generally*, § 61-4-201, MCA. Furthermore, obtaining a license under the provisions of Title 61, chapter 4, parts 1 or 2, "conclusively establishes that a new motor vehicle dealer, manufacturer, distributor, or importer is subject to the laws of this state regulating new motor vehicle dealers, manufacturers, importers, and distributors." Section 61-4-202(5)(c), MCA. Bombardier conducts business as a new motor vehicle distributor within the state and is duly licensed as required by § 61-4-202(2)(a), MCA. Hi-Tech conducts business as a new motor vehicle dealer within the state and is duly licensed as required by § 61-4-202(5), MCA.

¶15    The Motor Vehicle Division of the Montana Department of Justice (Department) is required by statute to supervise and regulate all persons required to be licensed under Title 61, chapter 4, part 2 of the MCA. Section 61-4-203, MCA. In carrying out this duty, the Department is authorized to conduct necessary investigations, conduct hearings pursuant to the provisions of the Montana Administrative Procedure Act (MAPA) and promulgate rules

6

necessary to implement the statutes it enforces. Section 61-4-203(1)-(3), MCA. The Department also is authorized to initiate administrative enforcement actions conducted pursuant to the contested case provisions of the MAPA against a person who violates any provision of Title 61, chapter 4, part 2 of the MCA. Part of the Department's duties under Title 61, chapter 4, part 2 of the MCA is to supervise the relationship between manufacturers, distributors or importers, and new motor vehicle dealers conducting business pursuant to a franchise agreement. *See* §§ 61-4-205 through -207, MCA.

¶16    A "franchisor" is defined as "a person who manufactures, imports, or distributes new motor vehicles and who may enter into a franchise." Section 61-4-201(7), MCA. In turn, a "franchisee" is "a person who receives new motor vehicles from the franchisor under a franchise and who offers, sells, and services the new motor vehicles to and for the general public." Section 61-4-201(6), MCA. Once a new motor vehicle franchise is created, the franchisor may not cancel, terminate or refuse to continue the franchise unless cause exists to terminate or discontinue the franchise. Section 61-4-205(1), MCA. Furthermore, a franchisor may not enter into a franchise establishing an additional new motor vehicle dealership in a community with an existing franchise dealer for that line of vehicles unless there is good cause for an additional dealership and it is in the public interest. Section 61-4-205(2), MCA. A franchisor seeking to terminate a dealership franchise or create an additional dealership franchise must, within 60 days prior to the intended action, file notice with the Department of the intended action. Section 61-4-205(3), MCA. The Department

7

then must provide notice to the existing franchisee of the intended action. Section 61-4-205(4), MCA.

¶17 Once an existing franchisee receives notice from the Department that the franchisor seeks to terminate the franchise or establish an additional franchise dealership, the franchisee may file a written objection to the Department's approval of the proposed action. Section 61-4-206(1), MCA. If a timely objection is filed, the Department must initiate a contested case proceeding pursuant to the MAPA. Section 61-4-206(2), MCA. At the contested case hearing, the franchisor has the burden of proving that good cause exists to terminate the existing franchise or establish an additional franchise. Section 61-4-206(3), MCA. The Department determines the existence or nonexistence of good cause pursuant to the guidelines set forth in § 61-4-207, MCA. Any party aggrieved by the decision of the Department may appeal to district court as provided in the MAPA. Section 61-4-206(7), MCA. The franchise agreement must continue in effect, with both the franchisor and franchisee abiding by its terms, during the administrative contested case proceedings, including any appellate review. Section 61-4-206(8), MCA. Thus, the *status quo* of the parties is maintained throughout the contested case and appellate review proceedings.

¶18 Finally, § 61-4-210(3), MCA, provides that

[i]f any new motor vehicle dealer incurs pecuniary loss due to a violation of this part by a manufacturer, distributor, importer, or factory branch or representative or agent thereof, the dealer may recover damages therefor in a court of competent jurisdiction in amount [sic] equal to three times the pecuniary loss, together with costs including reasonable attorney's fees.

Hi-Tech brought the underlying action asserting that Bombardier violated §§ 61-4-205 and -206, MCA, pursuant to this statute.

## DISCUSSION

¶19   1. Did the District Court err in concluding it had subject matter jurisdiction over the issue of whether a franchise existed between Hi-Tech and Bombardier?

¶20   In its motion to vacate or, in the alternative, to alter or amend the District Court's summary judgment order, Hi-Tech contended that the court did not have subject matter jurisdiction to consider Bombardier's affirmative defense that the relationship between Hi-Tech and Bombardier did not constitute a franchise.  Hi-Tech argued that the issue of whether a franchise existed was a question to be determined by the Department and, because Bombardier failed to initiate and exhaust its administrative remedies before the Department, the District Court was precluded from addressing this issue.  Hi-Tech further asserted that, because the court lacked jurisdiction to determine whether a franchise existed, it must conclude that a franchise did exist and grant summary judgment to Hi-Tech on that basis. The District Court denied Hi-Tech's motion, concluding that Bombardier had exhausted its administrative remedies and, consequently, the court had subject matter jurisdiction over the issue of whether a franchise existed between the parties.  Hi-Tech asserts error.  A district court's determination that it has subject matter jurisdiction is a conclusion of law which we review to determine whether the court's interpretation of the law is correct. *Art v. Montana Dept. of Labor and Industry*, 2002 MT 327, ¶ 9, 313 Mont. 197, ¶ 9, 60 P.3d 958, ¶ 9.

9

¶21 As stated above, § 61-4-205(3), MCA, provides that a franchisor which seeks to terminate a new motor vehicle dealer franchise agreement or create an additional franchise dealership in the community must file notice of its intended action with the Department not less than 60 days prior to the action. It is undisputed that Bombardier did not provide the Department with prior notice of its intent to enter a dealer agreement with Hi-Mountain. Nor did Bombardier provide the Department with prior notice of its intent to terminate its dealer agreement with Hi-Tech. Bombardier did not file these notices with the Department because it did not believe the snowmobile dealer agreement between it and Hi-Tech constituted a franchise and, therefore, the notice requirements of § 61-4-205, MCA, did not apply.

¶22 Notwithstanding its position that no franchise with Hi-Tech existed, Bombardier forwarded a copy of its termination letter to the Department in May of 2001, over five weeks after the agreement with Hi-Tech terminated by its terms. The Department then contacted Hi-Tech and informed Hi-Tech of its right to object to Bombardier's termination of the snowmobile dealer agreement pursuant to § 61-4-206(1), MCA. Hi-Tech objected to both the termination of its dealer agreement and Bombardier's creation of a new dealership with Hi-Mountain. The Department initiated an administrative proceeding pursuant to § 61-4-206, MCA. Hi-Tech then moved to dismiss the administrative proceeding on the basis that Bombardier's failure to comply with the statutory notice requirements deprived the Department of jurisdiction to make a good cause determination and that, because Bombardier's termination of the agreement and creation of a new dealership had already occurred, the administrative proceeding was moot. In response, Bombardier asserted that the

Department lacked subject matter jurisdiction because the dealer agreement between Bombardier and Hi-Tech did not constitute a franchise and, consequently, the notice and hearing requirements of §§ 61-4-205 and -206, MCA, did not apply.

¶23    The Department's hearing examiner entered a proposed order concluding that the Department had been deprived of its statutory jurisdiction over the matter as a result of Bombardier taking action without providing prior notice to the Department, and that the question of whether there was good cause to terminate the agreement or create a new dealership was moot because the actions had already occurred. She declined to address the issue of whether a franchise existed between Bombardier and Hi-Tech. Notwithstanding repeated requests by Hi-Tech, the Department never entered a final order in the administrative proceeding. Eventually, Hi-Tech initiated this action in the District Court pursuant to § 61-4-210(3), MCA.

¶24    As stated above, Hi-Tech contends that the District Court lacked subject matter jurisdiction to address Bombardier's affirmative defense that no franchise existed because Bombardier failed to exhaust its administrative remedies under §§ 61-4-205 and -206, MCA. Hi-Tech first correctly points out that, pursuant to § 61-4-203, MCA, the Department has the power to supervise and regulate all licensed motor vehicle dealers, manufacturers, distributors and other entities required to be licensed under Title 61, chapter 4, part 2 of the MCA. Hi-Tech asserts that this statutory grant of power delegates to the Department all authority, discretion and decision-making in carrying out its supervisory and regulatory duties, including the power to determine its own jurisdiction under § 61-4-205, MCA, which

11

necessarily encompasses the determination of whether a franchise exists. Hi-Tech advances cases such as *Bitterroot River Protection Ass'n v. Bitterroot Conservation Dist.*, 2002 MT 66, ¶ 15, 309 Mont. 207, ¶ 15, 45 P.3d 24, ¶ 15, and *Wilson v. Dept. of Public Service Reg.* (1993), 260 Mont. 167, 171, 858 P.2d 368, 370, for the proposition that a district court may not review an agency's jurisdiction until the party asserting the lack of jurisdiction exhausts administrative remedies, including allowing the agency the opportunity to make a determination regarding its jurisdiction.

¶25　Boiled down to its essence, Hi-Tech argues that all new motor vehicle manufacturers, distributors and importers who wish to terminate an existing dealer agreement or create an additional dealership within a community must comply with the notice and hearing requirements of §§ 61-4-205 and -206, MCA, regardless of whether they believe the agreement constitutes a franchise, and then request the Department to make a determination of whether a franchise exists which is subject to the franchise statutes. We disagree.

¶26　Our role in interpreting statutes "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The notice requirements contained in § 61-4-205, MCA, clearly apply only to franchisors. The statute provides that "a franchisor may not cancel, terminate, or refuse to continue a franchise unless the franchisor has cause" for such action. Section 61-4-205(1), MCA. Additionally, "[a] franchisor may not enter into a franchise for the purpose of establishing an additional new motor vehicle dealership in any community" unless there is good cause to do so and it is in the public interest. Section 61-4-

12

205(2), MCA. Finally, "[i]f a franchisor seeks to terminate or not continue a franchise or seeks to enter into a franchise establishing an additional . . . dealership . . ., the franchisor shall, not less than 60 days prior to the intended action, . . . file a notice with the department . . . ." Section 61-4-205(3), MCA.

¶27 Moreover, when the Montana Legislature intends provisions of the motor vehicle sale and distribution statutes to apply to more than one entity, it makes that intention clear. For example, in enacting the licensing requirements in § 61-4-202(2)(a), MCA, the Legislature explicitly listed the various entities subject to the requirement--manufacturers, distributors, factory branches, distributor branches, importers and franchisors. Similarly, § 61-4-208, MCA, sets forth various acts which are prohibited and lists numerous specific entities to which the prohibitions apply. In § 61-4-205, MCA, the Legislature made the notice requirements applicable only to franchisors and omitted the other entities which are generally regulated by other motor vehicle sale and distribution statutes. Furthermore, the term "franchisor" is defined separately from other terms such as "manufacturer," "distributor" and "importer," and that definition does not necessarily encompass those other entities. In other words, not all manufacturers, distributors and importers are franchisors.

¶28 Thus, a manufacturer, distributor or importer is not subject to the § 61-4-205, MCA, notice requirements unless it also is a franchisor. If a manufacturer, distributor or importer is not, or does not believe it is, doing business in Montana under a franchise--which is Bombardier's position in the instant case--it need not comply with the notice requirements. While such a decision not to comply with the statute carries the risk that the entity later may

13

be determined to be a franchisor, it is the entity's decision to make at the outset. Consequently, § 61-4-205, MCA, compels our conclusion that Hi-Tech's argument--that all new motor vehicle manufacturers, distributors and importers who wish to terminate an existing dealer agreement or create an additional dealership within a community must comply with the notice requirements and then request the Department to make a determination of whether a franchise exists--is misplaced.

¶29 Moreover, a new motor vehicle dealer who believes its dealer agreement with a manufacturer, distributor or importer constitutes a franchise and that the § 61-4-205, MCA, notice requirements have not been complied with may bring a direct action in district court for violation of that statute pursuant to § 61-4-210(3), MCA. Hi-Tech did precisely that in the present case. A § 61-4-210(3), MCA, action is not connected to the administrative contested case proceeding provided for in §§ 61-4-205 and -206, MCA, and does not require a party to initiate and exhaust administrative remedies prior to bringing the action. The district court in a § 61-4-210(3), MCA, action merely determines whether a statutory violation occurred and whether the new motor vehicle dealer suffered pecuniary loss as a result.

¶30 In the present case, Hi-Tech brought this action pursuant to § 61-4-210(3), MCA, alleging that Bombardier failed to comply with the § 61-4-205, MCA, notice requirements. Bombardier responded that the dealer agreement between the parties did not constitute a franchise and, as a result, § 61-4-205, MCA, is not applicable. As a result, the posture in which the case was presented to the District Court required the court to address the question

14

of whether a franchise existed. We hold that the District Court did not err in concluding it had subject matter jurisdiction over the issue of whether a franchise existed between Hi-Tech and Bombardier.

¶31 2. Did the District Court err in granting summary judgment to Bombardier based on its conclusion that no franchise existed?

¶32 We review a district court's grant of summary judgment *de novo,* using the same Rule 56, M.R.Civ.P., criteria as applied by that court. *Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 14, 323 Mont. 453, ¶ 14, 100 P.3d 987, ¶ 14. In that regard, Rule 56(c), M.R.Civ.P., provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment has the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Arthur*, ¶ 14. If this burden is met, then the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Arthur*, ¶ 14. If the district court determines no genuine issue of material fact exists, the court determines whether the moving party is entitled to summary judgment as a matter of law. This determination is a conclusion of law which we review for error. *Arthur*, ¶ 14.

¶33 We first address Bombardier's motion on appeal to limit the use of affidavits appended to Hi-Tech's post-judgment motion in the District Court for the purpose of Hi-Tech's subject matter jurisdiction argument only. Bombardier argues that the affidavits were

15

untimely and Hi-Tech has not established that the evidence or testimony contained in the affidavits was unavailable prior to judgment being entered by the District Court. On that basis, Bombardier contends that the affidavits cannot be used by Hi-Tech as support for its argument that a franchise existed between Bombardier and Hi-Tech.

¶34 Hi-Tech moved to alter or amend the District Court's summary judgment order pursuant to Rule 59, M.R.Civ.P. We have held that a Rule 59 motion properly may raise newly discovered or previously unavailable evidence, but may not be used to relitigate old matters, present the case under new theories, raise arguments which could have been raised prior to judgment or give a litigant a second bite at the apple. *See Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶¶ 75-76, 304 Mont. 356, ¶¶ 75-76, 22 P.3d 631, ¶¶ 75-76; *Cook v. Hartman*, 2003 MT 251, ¶ 24, 317 Mont. 343, ¶ 24, 77 P.3d 231, ¶ 24. We agree with Bombardier that Hi-Tech has not established that the testimony and evidence contained in the affidavits at issue were not available prior to the District Court's judgment and that Hi-Tech was attempting via the affidavits to relitigate issues already presented to the court. As a result, we grant Bombardier's motion and do not rely on these affidavits in our resolution of this issue.

¶35 In its findings of fact, conclusions of law and order granting summary judgment to Bombardier, the District Court determined that no genuine issues of material fact existed and Bombardier was entitled to summary judgment as a matter of law based on its conclusion that the relationship between the parties did not constitute a franchise as defined in § 61-4-201(5), MCA. Hi-Tech asserts the District Court erred.

16

¶36 A "franchise" is defined in § 61-4-201(5), MCA, as follows:

a contract between or among two or more persons when all of the following conditions are included:

(a) a commercial relationship of definite duration or continuing indefinite duration is involved;

(b) the franchisee is granted the right to:

(i) offer, sell, and service in this state new motor vehicles manufactured or distributed by the franchisor; or

(ii) service motor vehicles pursuant to the terms of a franchise and a manufacturer's warranty;

(c) the franchisee, as an independent and separate business, constitutes a component of the franchisor's distribution system; and

(d) the operation of the franchisee's business is substantially reliant on the franchisor for the continued supply of new motor vehicles, parts, and accessories.

Neither Hi-Tech nor Bombardier dispute that the relationship between the parties meets the criteria set forth in § 61-4-201(5)(a)-(c), MCA. They dispute only whether Hi-Tech was substantially reliant on Bombardier for the continued supply of new motor vehicles, parts, and accessories as required by § 61-4-201(5)(d), MCA. The core of their dispute is the meaning of the phrase "substantially reliant."

¶37 In addressing the meaning of "substantially reliant," the District Court first observed that no statutory definition or Montana case law interprets the phrase "substantially reliant." The court then interpreted the plain meaning of the phrase by applying the definition of "substantial" contained in Webster's Collegiate Dictionary and determining that "substantial"

17

means "essential," "significantly great" or "largely but not wholly that which is specified." Based on these definitions, the court concluded that, in order for a new motor vehicle dealer to be substantially reliant on a supplier, the dealer would need to generate approximately 50 percent or more of its revenue from the sale of vehicles, service and parts from that supplier.

¶38    It is uncontroverted here that, in the several years prior to the termination of the dealer agreement, Hi-Tech derived only approximately 13 percent of its revenue from the sale of Bombardier vehicles, service and parts. On this basis, the District Court concluded that Hi-Tech was not substantially reliant on Bombardier for the continued supply of new motor vehicles, parts, and accessories and, therefore, no franchise existed pursuant to § 61-4-201(5), MCA. The District Court buttressed its conclusion regarding the meaning of substantially reliant by citing to *Kansas City Trailer Sales v. Holiday Rambler Corp.*, 1994 WL 49932 (W.D.Mo.), an unpublished federal district court decision. Hi-Tech contends that the District Court's interpretation of "substantially reliant" as pertaining only to the percentage of revenues a dealer derives from the sale of a supplier's products is too limited and that the court's reliance on *Kansas City Trailer Sales* is misplaced. We agree.

¶39    In *Kansas City Trailer Sales,* the federal district court was asked to determine whether a franchise existed pursuant to the definition of that term contained in the Missouri Motor Vehicle Franchise Act (Act). In pertinent part, the franchise definition in the Missouri Act required that "the operation of the franchisee's business with respect to such franchise is substantially reliant on the franchisor for the continued supply of franchised new motor vehicles, parts and accessories for sale at wholesale or retail." *See* Mo. Rev. Stat. §

18

407.815(4) (2003). The federal district court determined that, under this definition, whether a dealer is substantially reliant on a supplier must be determined by examining the extent of the supplier's control over the types of products that are subject to the alleged franchise rather than the relation of the supplier's products to the dealer's business as a whole. *Kansas City Trailer Sales* at \*3. In reaching this conclusion, the court observed that numerous states, including Montana, have incorporated "substantially reliant" language into their statutory definitions of "franchise," but none use the limiting language of "the operation of the franchisee's business with respect to such franchise" contained in the Missouri statute. *Kansas City Trailer Sales* at \*2. The court further observed that franchise definitions using language such as that in Montana's franchise statute could more readily be interpreted as meaning that a franchisee's reliance on a franchisor should be measured in terms of the franchisee's entire business. *Kansas City Trailer Sales* at \*2. The District Court in the present case relied on this latter observation as support for its conclusion that Hi-Tech was not substantially reliant on Bombardier.

¶40 We conclude that the District Court's reliance on *Kansas City Trailer Sales* is misplaced. First, an unpublished decision from a federal district court interpreting another state's statute containing language different than Montana's statute is of no value to this Court. Second, the federal district court's discussion in that case of Montana's and other state's franchise statutes and their meaning was *obiter dictum* in its entirety. Thus, the *Kansas City Trailer Sales* case is of no assistance in resolving the issue before us.

19

¶41    As stated above, the District Court applied the "substantially reliant" portion of the franchise definition by relating the amount of Hi-Tech's revenues generated by the sale of Bombardier motor vehicles, service and parts to Hi-Tech's overall revenues.  The court determined that, if sales of Bombardier products constituted less than 50 percent of overall revenues, Hi-Tech was not substantially reliant on Bombardier for the continued supply of such new motor vehicles, parts, and accessories.

¶42    Hi-Tech asserts that the District Court's cutoff line of 50 percent is unrealistic and ignores alternative definitions of "substantial" which would more appropriately apply here. Hi-Tech points out that, in its summary judgment order, the court noted, but ignored, other definitions of "substantial" such as "consisting of or relating to substance" and "not imaginary or illusory, real, true." Hi-Tech contends that incorporating these other definitions of "substantial" establishes that deriving less than 50 percent of overall revenues from sales of products from one supplier can constitute substantial reliance by a motor vehicle dealer on that supplier.  Hi-Tech and *amicus curiae* the Montana Manufactured Housing and Recreational Vehicle Association (MMHRVA) also cite to cases interpreting the term "substantial" in other contexts in support of their argument that the term cannot be properly analyzed using a bright-line test of 50 percent.  *See, e.g., Buskirk v. Nelson* (1991), 250 Mont. 92, 818 P.2d 375 (even evidence which is weak or conflicting may be substantial if it is not trifling or frivolous); *Reed v. American Airlines, Inc.* (1982), 197 Mont. 34, 640 P.2d 912 (a company's activities in Montana may be substantial if they comprise a significant component of the company's business).

20

¶43 MMHRVA also points out that losing 13 or 25 percent of a company's revenues can be enough to force the company out of business. *Amicus curiae* Montana Automobile Dealers Association observes that motor vehicle dealers often invest hundreds of thousands of dollars in building and maintaining a place of business and developing a service department and parts inventory, and that such dealers therefore are substantially reliant on their suppliers for a continued supply of vehicles and parts in order to recoup that investment. Additionally, Hi-Tech observes that application of the 50 percent of overall revenues standard effectively forecloses any motor vehicle dealer carrying products from multiple suppliers from being fully protected by the franchise statutes.

¶44 We conclude that, in analyzing whether Hi-Tech was "substantially reliant" on Bombardier in terms of the ratio between Hi-Tech's overall revenue and the revenue received from Bombardier products, the District Court applied an unnecessarily restrictive and simplistic standard which failed to address other non-revenue based circumstances potentially impacting on the "substantially reliant" issue. We further conclude, therefore, that the District Court erred in determining that Hi-Tech was not substantially reliant on Bombardier for the continued supply of new motor vehicles, parts, and accessories because it derived less than 50 percent of its revenue from Bombardier's products. As a result, we hold that the District Court erred in concluding that the relationship between Hi-Tech and Bombardier did not constitute a franchise and that it erred in granting summary judgment to Bombardier on that basis.

¶45     Affirmed in part, reversed in part and remanded for further proceedings.


/S/ KARLA M. GRAY


We concur:


/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ JOHN WARNER


Justice Jim Rice specially concurring.

¶46     I concur in the Court's opinion.  The Court has skillfully explained the statutes at issue and has rendered the most plausible interpretation thereof, given their imprecise wording and structure, and given the canons of statutory construction we must apply.  The statutes repeatedly use laundry lists of defined business entities, *see* § 61-4-202(1), MCA ("[a] new motor vehicle dealer, manufacturer, distributor, factory branch, distributor branch, importer, or franchiser may not engage . . ."), but the lists vary from subsection to subsection, leaving the unavoidable impression that the Legislature intended that each subsection would apply only to those business entities which were specifically listed therein.  Thus, the Court correctly concludes that Bombardier, if it is not a franchisor, is not subject to the notice provisions of § 61-4-205, MCA–and the administrative proceeding which follows thereafter.  Although the Court notes that a manufacturer "need not comply" with

22

this provision at its own risk, I would simply add that such risk includes criminal sanctions under which each day of noncompliance constitutes a separate violation. *See* § 61-4-210(1), MCA.

¶47    The statutes are at times inconsistent. For example, the Court notes that Hi-Tech conducted business as a new motor vehicle dealer duly licensed under § 61-4-202(2), MCA. However, under § 61-4-201(12), MCA, a "new motor vehicle dealer" is defined as "a person who buys, sells, exchanges, or . . . is engaged in the business of selling new motor vehicles *under a franchise* . . . ." (Emphasis added.) Logically, one cannot be selling under a franchise except through a franchisor. Nonetheless, when consideration is given to the wording and structure of the statutes as a whole, I believe the Court has rendered the correct interpretation. I would suggest that the Legislature undertake review of these provisions for the purpose of clarifying them for the benefit of all concerned.


/S/ JIM RICE


Justice James C. Nelson joins in the foregoing specially concurring opinion.


/S/ JAMES C. NELSON

23